GREEN BAY-WAUSAU LINES, INC., Respondent, vs. MANGEL and others, Defendants: AMERICAN CASUALTY COMPANY, Appellant.

*April 4—May 2, 1950.*

*Orville S. Luckenbach* of Shawano, for the appellant.

For the respondent there was a brief by *Berk & Jarstad* of Green Bay, and oral argument by *Gordon K. Jarstad.*

FAIRCHILD, J. The driver of the automobile (defendant's car) was in the traffic lane to his right of the highway. This is according to testimony of the witnesses other than those in the car. It appears that the driver desired to enter into a certain wayside park with which he and his family were familiar. This park was on the left side of the highway as the car was being driven. In proceeding, the driver turned his vehicle to the left and out of his lane of traffic. He did not, before making the turn, ascertain whether such movement could be made with reasonable safety. He did testify that he was not aware that the bus was in the vicinity of his car and would likely be affected by such movement. His testimony is that at a point farther back he had looked in his rear-view mirror and did not see the bus and that he did not look again, his reason being that he was thereafter moving on an angle and that a glance at the mirror would serve no purpose. However, the controlling testimony is that the bus was approaching and while defendants were still in the right traffic lane, it (the bus) had moved over to the left lane of traffic and was about to pass the car, when, in accordance with the driver's intention to turn into the park, there was a sudden turn of his automobile on an angle of at least forty-five degrees invading the left traffic lane just ahead of the bus.

The jury, on competent evidence, having found as a fact that the turn was made in the manner and under the circumstances described, it follows that defendant improperly deviated from the proper traffic lane, that is, the one in which the operator was driving when the bus undertook to pass, because he turned without first ascertaining that such move-

ment could "be made with safety to other vehicles approaching from the rear." Sec. 85.16 (2), Stats. 1947.

The defendants urge that there was failure on the part of the bus driver to indicate his purpose to pass their car, and that he failed to sound his horn. Sec. 85.16 (4), Stats. 1947. The question thus raised places our inquiry as to what happened in a rather limited space as to area and time. The question of sounding the horn was one of considerable importance in the trial as bearing upon the question of plaintiff's part in the result. The bus driver was bound to give the required signal before passing. The driver of the car was then bound to stay in his traffic lane. Although the bus driver testified that he did not remember whether he sounded the horn, there were others present who testified that the horn was sounded. The jury found that the signal had been given. There was positive testimony sufficient in character to sustain the finding that the horn was blown. This evidence and the finding of the jury based on it relieves the plaintiff of any charge of negligence on which to base a ruling of liability for the accident against it. Mr. Mangel, the driver of the car, testified: "I started to the left—I was running about the middle of the road for about two or three car lengths—and gradually eased to the left side of the road. As I was turning to the left my son yelled at me that the bus was coming on the left and I swung the wheel to the right. . . ." He testified that he knew the difference in sound of horns on buses from ordinary automobile horns, and he was then asked: "*Q*. Now, again, are you sure whether or not you heard any bus horn sound just prior to this accident? *A*. I heard no sound of any horn." He was of the impression that his wife was sitting to his right and that his son was with them, all three on the front seat. The wife's testimony was: "I was doing some needlepoint work in the back seat of the car." They insist that such testimony constitutes enough of a denial of the fact to raise the issue as to whether the horn was

blown and criticize the instructions of the court where the difference between negative and positive testimony was described. If we assume that the issue was properly raised as to whether the signal was given, then, under the rule recognized in *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 262 N. W. 581, and under *Hunter v. Sirianni Candy Co.* 233 Wis. 130, 288 N. W. 766, the question of whether the horn was sounded was within the competence of the jury to determine.

The learned trial judge in his instructions to the jury dealt with the matter of positive and negative testimony by describing the character of such testimony and the manner of weighing it. The question was resolved by the jury in favor of the plaintiff. The circumstances established by the testimony disclose the characteristics which weigh the difference between positive testimony that a certain thing was done and negative testimony such as "I didn't hear the blowing of the horn." The trial court said that unless there were other circumstances showing that persons who testified that they did not hear were in a position that they must have heard had the horn been sounded, such as that they were paying attention and that they were ready to observe the act or sound, the positive testimony would be the more reliable. The inferences drawn by the jury rest on the evidence of the positive testimony that the horn was blown, and upon a consideration of the negative testimony in connection with the circumstances showing or tending to show that the defendants' driver's attitude was toward locating the entrance to the wayside park, and that his particular attention was being given to the matter of entering the park where he and his family had planned to stop.

There is competent evidence that plaintiff complied with the requirements of its duty in attempting to pass, and the jury found that at the time and immediately prior to the collision of the bus with the stone pillar at the entrance to

the park the defendant was negligent with respect to lookout and with respect to deviating from the traffic lane.

The weight that shall be given to evidence if relevant and competent is a question of judgment ordinarily for the triers of fact. There were objections by the plaintiff to testimony offered by the defendant which were sustained, thus preventing an answer by a witness as to whether or not he had any claim arising out of the accident. But a verdict is not to be set aside because of the exclusion of evidence, unless it would probably have had a substantial influence in bringing about a different verdict or finding. Although all the witnesses evidently endeavored to give an exact account of the incidents that led up to the result, the testimony referred to, favorable to the plaintiff, sustains the findings of the jury and requires holding that the plaintiff is entitled to have the judgment below affirmed. A review of the record does not warrant holding that there exists prejudicial error in rulings of the trial court which warrant disturbing the conclusions of the jury or the order for the judgment below.

*By the Court.*—Judgment affirmed.