Scott, Appellant, vs. Gilbertson and another, Respondents.

*October 9—November 5, 1957.*

For the appellant there was a brief and oral argument by *Francis X. Krembs* of Milwaukee.

For the respondents there was a brief by *Moss & Wickhem* of Janesville, and oral argument by *John C. Wickhem.*

CURRIE, J.   Counsel for the plaintiff Scott on this appeal contends that Scott is entitled to a new trial because of error committed during the ·course of trial.   The issues before us are as follows:

(1) Should a question inquiring whether the defendant Gilbertson was negligent as to lookout have been submitted in the special verdict, the plaintiff having requested the same?

(2) Should a question have been included in the special verdict inquiring whether Gilbertson was negligent in failing to yield the right of way upon an audible signal having been given by the plaintiff of his intention to pass?

(3) Does the evidence sustain the jury's findings that the plaintiff was causally negligent as to (a) speed, (b)

management and control, and (c) failure to give an audible signal of his intention to pass?

(4) Were the damages awarded to the plaintiff so inadequate so as to denote perversity on the part of the jury?

The accident occurred at about 11:30 a. m., March 10, 1954, on Highway 11 in western Rock county. Such highway runs in a generally easterly and westerly direction. Both vehicles were proceeding in a westerly direction. Scott was operating a 1953 Plymouth automobile and was alone. Gilbertson was driving a 1951 Chevrolet half-ton pickup truck, and was accompanied by his wife. The weather was clear and the pavement dry. Highway 11 at the point of collision is practically level and this condition existed in either direction for a long distance. It is a two-lane highway paved with concrete. It has dirt shoulders, the width of which does not appear in the record. Judging from photograph exhibits, we estimate the width of the shoulders to be approximately eight feet. Beyond the shoulder on the south side of the highway is a shallow ditch, which, except for the driveway into which Gilbertson attempted to turn, is bordered on the south by a barbed-wire fence. There are also utility poles in or near such fence line spaced at the customary intervals. The private driveway leading off the highway to the south, into which Gilbertson attempted to turn, had a width of 42 feet. It was constructed of dirt with a metal culvert underneath where it crossed the highway ditch.

A summary of Gilbertson's pertinent testimony is as follows: When he was 25 to 30 feet east of such driveway and in his own proper lane of travel, he looked in his rearview mirror and saw the Scott automobile about 100 to 125 feet to his rear and also in the north traffic lane. He estimated his own speed at from 40 to 45 miles per hour as he approached the driveway, but he had by this time reduced his speed by pumping his brakes several times as a

warning signal. He then made a "looping" turn to his left into the driveway and heard a noise to the rear. He looked and saw the Scott automobile on the south shoulder of the highway bearing down on him. The impact occurred immediately. The Gilbertson truck was then in the driveway, but he did not know if any part of it was still on the concrete highway. He heard no horn sounded by Scott. Gilbertson gave no testimony as to giving any warning signal, other than that made by his brake pedal, of his intention to make a left turn.

The following is a synopsis of Scott's testimony bearing on the negligence issues. He was driving along at a speed of 60 miles per hour when he noticed Gilbertson's truck about a half mile ahead of him. It was then astride the center line of the highway, traveling at an estimated speed of 45 miles per hour. The distance between the two vehicles closed until the Gilbertson truck was but six or eight car lengths ahead. Then Scott sounded his horn, decreased his speed, and crossed the center line of the highway into the south lane. Gilbertson decreased his speed also and turned abruptly to the right. Scott construed this as an invitation to pass and undertook to do so, only to be trapped when Gilbertson's truck turned left across his path. Scott attempted to avoid a collision by immediately applying his brakes, but such effort was unavailing and the collision took place.

One Jones was also operating an automobile in a westerly direction following the Scott and Gilbertson vehicles. He testified that he was about 200 feet distant from the point of impact when the collision occurred. According to Jones, the left door of the Gilbertson truck was then just to the south of the highway center line, which would place the point of impact in the south traffic lane. This is because the Scott car struck the left side of the truck near the cab door. Jones denied that Gilbertson had at any time been straddling the

center line. Jones also testified that at no time did he hear a horn sounded.

Mrs. Gilbertson also testified that her husband had not been over to the south side of the center line prior to making the left turn, and that she at no time heard a horn sounded by Scott.

A traffic officer, who investigated the accident shortly after it occurred, testified that Gilbertson then admitted not having seen the Scott car prior to the impact.

With this factual background we will now consider the issues raised by the appellant Scott. We are satisfied that, independently of Gilbertson's duty to make an observation to the rear to ascertain if he could make the left turn into the private driveway with reasonable safety, which is a requirement clearly implied by sec. 85.175 (1), Stats.,[1] there was no duty on his part to look to the rear. Cases so holding are *Thoresen v. Grything* (1953), 264 Wis. 487, 490, 59 N. W. (2d) 682, and *Statz v. Pohl* (1954), 266 Wis. 23, 30, 62 N. W. (2d) 556, 63 N. W. (2d) 711. The learned trial court in the instant case properly instructed the jury, with respect to the question which inquired as to whether Gilbertson was negligent in the manner in which he made his left turn, as to the requirements imposed upon a driver in Gilbertson's situation by sec. 85.175 (1). Under these circumstances we hold that there was no error in not submitting a separate question in the verdict as to Gilbertson's lookout. If such a question had been submitted the verdict might well be determined to be duplicitous.

[1] Sec. 85.175 (1), Stats., reads, "No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in sec. 85.17, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement."

The appellant cites the cases of *Balzer v. Caldwell* (1936), 220 Wis. 270, 263 N. W. 705, *Green Bay-Wausau Lines v. Mangel* (1950), 257 Wis. 92, 42 N. W. (2d) 493, and *Frankland v. Peterson* (1955), 268 Wis. 394, 67 N. W. (2d) 865, as supporting his contention, that a question as to Gilbertson's lookout should have been submitted in addition to the question inquiring as to whether he was negligent in the manner of making the left turn. We do not consider any of such cases to be in point on this issue. This is because, although a question as to lookout was submitted therein, in addition to a question as to the manner of making a turn, this court did not in any of such three cases pass on the issue of duplicitous verdict.

Fact situations, like those here present, should be distinguished from such as we had presented in *Paulson v. Hardware Mut. Casualty Co.*, ante, p. 94, 85 N. W. (2d) 848, the decision in which latter case was handed down this day. There the collision occurred between a vehicle turning left and another proceeding in the opposite direction. In such a situation, the driver making the left turn has a duty to keep a lookout ahead independently of making the observation required under sec. 85.175 (1), Stats. In such a fact situation, it may be proper to submit a separate question on lookout in addition to the question, which inquires as to whether there was negligence in the manner of making the left turn.

The appellant stands on firmer ground when he urges that it was error for the trial court not to have submitted the requested question in the verdict, which inquired as to whether Gilbertson was negligent in failing to yield the right of way upon an audible signal having been given by Scott of his intention to pass. Such duty of yielding the right of way is imposed by sec. 85.16 (4), Stats. This duty is separate and apart from anything included in sec. 85.175. Therefore, it was error for the trial court not to have submitted such requested question on yielding the right of way.

However, the jury specifically found that Scott did not give an audible signal of his intention to pass. This removed from the case any duty of Gilbertson to yield the right of way to Scott pursuant to sec. 85.16 (4), and rendered non-prejudicial the error in failing to submit such requested question.

We pass now to consideration of appellant's contentions, that the evidence does not sustain the jury's findings that Scott was causally negligent with respect to (a) speed, (b) management and control, and (c) failure to give an audible signal of intention to pass.

The jury did not have to accept Scott's testimony as to his own speed. From the physical facts, the jury could conclude that Scott's car was traveling at a speed in excess of 65 miles per hour when it approached the scene of the accident. It left 45 feet of skid marks on the concrete pavement to the east of the east edge of the 42-foot private driveway. There were no marks on the driveway itself, but there were skid marks 24 feet in length made by the Scott car extending in the ditch from the west edge of the driveway to a utility pole which was struck by the car. After striking such pole the car proceeded another 90 feet to the west mowing down a row of fence posts before finally coming to rest. Glass from the Scott car was imbedded in the utility pole at a height of five feet from the ground. The Scott car was practically demolished, and the entire left side of the Gilbertson truck was badly damaged. The fact that there were no marks on the private driveway gives rise to the possible inference that the Scott car flew through the air for some distance after striking the Gilbertson truck. This court cannot hold as a matter of law that there was no credible evidence to support the jury's finding that Scott was causally negligent as to speed.

In considering the question of Scott's management and control, the jury had the right to believe Gilbertson's testi-

mony that he pumped his brake foot pedal up and down several times as a warning signal to Scott, who was approaching from his rear. While this was insufficient as a signal of an intention to turn left, it should have warned Scott that Gilbertson proposed to do something that would affect traffic coming from the rear. The jury might well have determined that Scott should have immediately decreased his speed so as to have his car under control to meet any situation that might arise with respect to the operation of the Gilbertson truck. Furthermore, the jury might also have concluded that Scott could have steered his car so as to avoid the collision.

There was a sharp conflict between the testimony of Scott on the one hand, and that of Mr. and Mrs. Gilbertson and Jones on the other, as to whether Scott sounded an audible signal of intention to pass. This clearly made the issue, as to whether such audible signal was given, one for the jury.

The last issue to be considered is appellant's contention that the jury's award of $4,000 for Scott's personal injuries establishes perversity which tainted the entire verdict. The question in the verdict inquiring as to Scott's loss of earnings resulting from the accident was answered by the court in the sum of $3,309.82. In addition to the $4,000 and the $3,309.82, the verdict fixed the amount of Scott's hospital and medical expenses at $835.25.

Immediately following the accident, Scott was hospitalized at the St. Clare Hospital in Monroe where he remained until March 26, 1954. He suffered a slight cerebral concussion, some lacerations, severe contusions, and several fractured ribs. However, his most-severe objective injuries consisted of fractures of the fifth and sixth cervical vertebrae, in other words, a fractured neck. Treatment consisted of traction, applying a chest binder, medication for pain, and being fitted with an Albee collar for the neck injuries. It

was necessary for him to wear such Albee collar until June, 1954. After leaving the hospital he was confined to bed for some time, and he was totally disabled until July 6, 1954. Since then he has resumed his work as sales supervisor over an extensive territory for his employer, the Standard Oil Company. He claims that the effect of his injuries has prevented him from fully performing the duties of this position. He testified that he still experiences severe headaches and pains in his neck and back. The X rays disclosed a pre-existing arthritic condition of the neck vertebrae, which the fractures due to the accident have aggravated.

In addition to the injuries which could be objectively determined, Scott claims a severe permanent loss of hearing due to the accident. A medical specialist in this field determined that he has a permanent combined hearing loss of 24.54 per cent. There is no way of determining whether all of this is attributable to the accident, except Scott's testimony that his hearing was normal prior thereto. However, the medical testimony disclosed that many people sustain a natural hearing loss after age thirty that is so gradual that they are not aware of it.

While the $4,000 awarded by the jury for Scott's personal injuries does seem low, we do not consider it to be so extreme as to indicate any perversity on the part of the jury.

*By the Court.*—Judgment affirmed.