FRANKLAND, Respondent, vs. PETERSON and others, Appellants.

*December 6, 1954—January 11, 1955.*

For the appellants there was a brief by *Eastman, Rose & Faller* and *Norman B. Langill,* all of Marinette, and oral argument by *John E. Faller.*

For the respondent there was a brief and oral argument by *Emmet McCarthy* of Marinette.

Brown, J. Sec. 85.16, Stats., provides:

"RULES FOR PASSING. (1) *Signals for passing.* The operator of an overtaking motor vehicle not within a business or residence district shall give audible warning with his warning device before passing or attempting to pass a vehicle proceeding in the same direction."

To comply with the purpose of the statute the warning must be given in volume and at a time and place sufficient to inform a driver reasonably attentive to his own obligation to other users of the highway that an overtaking motorist intends to pass him and is about to do so. The jury might believe from plaintiff's own testimony that he blew his horn twice when he was 300 feet behind defendants' truck and not thereafter. We think that reasonable minds might differ as to whether that is sufficient to convey to the leading driver the information intended by the statute that the second car is attempting to pass him. We consider that there was a jury issue on this point.

We do not find abuse of discretion in ordering a new trial for the other reasons the court gave in the decision on plaintiff's motion after verdict. The plaintiff did blow his horn, though perhaps not at a proper distance. As a matter of law, such causal negligence as plaintiff was guilty of in this matter did not equal the negligence of Allen Peterson in turning across the highway without a signal and without observing plaintiff's automobile, though that was then almost abreast of him.

In the matter of damages, at the time of trial the plaintiff had not experienced any loss of income and made no claim for any. But his doctor, Dr. Zeratsky, testified that:

(Summarized.) "He was in shock and partially comatose. He sustained a basilar skull fracture of the sphenoid bone severing the optical nerve causing permanent blindness in the left eye. The optic nerve was torn by the head injury. Laceration of the nerve is like cutting an electric wire, there are no impulses that get through so the patient had immediate blindness in that eye. The damage to the patient's optic nerve is permanent and so is the loss of vision in the left eye. There is a permanent loss of binocular vision resulting in the loss of depth perception. The remaining eye has to be carefully guarded. It becomes very precious. The patient also suffered mental depression because of the fear of objects approaching on the blind side. The patient being a dentist suffered a very major disability because there is no depth perception with one eye. As a dentist he would have difficulty placing his tools the proper depth in a patient's mouth in the area he is working. He has difficulty working at close range because he would have to feel his way. He suffered marked mental depression and persistent headaches for which he received stimulants to pick him out of his depression. For his mental depression he was given dexedrine and oretone and medication for his headaches. The headaches persist and is a traumatic headache. It is an evasive sort of thing depending on the size of the skull injury and brain laceration."

The plaintiff was later examined by Dr. James V. May, specializing in the field of eye, ear, nose, and throat. He testified:

(Summarized.) "There will be no recovery from the blindness of the left eye. The plaintiff having lost depth perception will have to feel to find any cavities in which he wants to drill on his patients. He is also subject to the hazards of injury to the remaining eye and hundreds of diseases that the eye is subject to. The vision in the plaintiff's right eye is normal. Vision in patient's both eyes was good prior to the accident though he wore glasses for close work."

The plaintiff, himself, testified:

(Summarized.) ". . . the headaches continue. They're brought on mostly by my work. My work requires the use of magnifying mirrors. They are used inverted. If you are right-handed, you use the right-hand side of the dental chair and the closest point to the mirror is your left eye. If you have an impairment in the one eye, the strain is thrown onto the other. Since the accident I get to the office late in the morning and make less appointments to get away from the extra strain but the headaches continue and I have to either go to the doctor or where it is quiet."

None of the testimony concerning the extent of the injuries is disputed. Though no loss of income and no disfigurement is involved, we agree with the trial court that $4,500 is inadequate for this injury.

We find no abuse of discretion in the order directing a new trial.

*By the Court.*—Order affirmed.