NEUENSCHWANDER, Appellant, vs. HORNOF, Respondent.

*September 12—October 9, 1956.*

472

474

For the appellant there was a brief and oral argument by *George H. Murwin* and *Cleland P. Fisher,* both of Janesville.

For the respondent there was a brief by *Garrigan, Keithley, O'Neal & Dobson* of Beloit, and oral argument by *Roger D. O'Neal.*

FAIRCHILD, C. J.    The two questions to be considered on this appeal are: (1) Is there credible evidence to support the findings of the jury? (2) Did the trial court commit prejudicial error in receiving in evidence a written statement signed by one of defendant's witnesses?

The rule with respect to credible evidence is that if there is any credible evidence to support the findings of the jury this court will not disturb those findings. The appellant seeks reversal of the judgment under the rule that testimony in direct conflict with established physical facts is not credible, citing *Strnad v. Co-operative Insurance Mutual,* 256 Wis. 261, 40 N. W. (2d) 552. In that case the jury found both drivers on the wrong side of the road. However, there photographs submitted in evidence established clear proof that the accident occurred in the northbound driver's lane, and the supreme court reversed the lower court's order for a new trial. In the instant case, photographs of the highway which were submitted in evidence were taken two years after the date of the accident. No such clear proof of the physical facts was established at the trial of the present case as was established in the above-cited case, and the issue was a jury question.

Appellant claims that immediately after the impact there was a gouge mark in the highway in the appellant driver's proper lane of travel. The photographs which he offers in evidence were taken two years after the accident. On the night of the collision, neither appellant nor respondent saw the gouge in the highway, as neither made any investigation.

There is testimony by the appellant's wife and his father that they went to the scene of the accident at about five o'clock on Sunday afternoon, August 23, 1953, nearly seventeen hours after the collision, and found a fresh gouge. However, there is conflicting testimony by two of respondent's witnesses. The deputy sheriff who was called to the scene the night of the accident, and a disinterested witness, testified that he found no gouge in the highway. On redirect examination, his testimony was:

"I stated on direct examination that no one that night pointed out any particular point at which they indicated there was a point of impact. It is my testimony that I walked a distance of one-half mile between these cars on the night in question out on the pavement scrutinizing every square inch of it the whole way."

An investigator for the insurance company went to the scene of the accident on Tuesday afternoon, August 25, 1953, nearly three days after the collision, and he testified:

"I was looking for physical evidence which might give me indication as to how this accident occurred. . . . I observed the black-top surface of the highway, the shoulder and ditch located to the north side of the highway.

"I was looking for physical evidence which might give me indication as to how this accident occurred. I had the sheriff department's report with me at the time. As I walked along the north shoulder, I observed the black-top surface of the highway, the shoulder and ditch located to the north side of the highway. I walked from the west entrance of the Oak Park driveway, completely around the curve, and I should judge, approximately 150 to 200 feet past the point where the curve begins as to head toward Janesville on the highway. At that point I crossed the highway and proceeded east on the south shoulder of the highway, walking toward Janesville or east. I carefully observed the black-top surface of the highway, the shoulder of the road and the fence line.

"I walked from the point where I crossed the road to the west of the curve along the south shoulder, down past the

point where the sheriff's report indicated Neuenschwander's car come to rest and then again crossed the highway. I found nothing on the traveled portion of the highway."

Respondent contends that such testimony is negative, but such contention cannot be sustained. On cross-examination the sheriff was asked: "Would you have seen it [the gouge mark] if it had been there?" He answered: "I think we would have seen that mark on the night in question had it been there." In answer to a similar question the insurance investigator answered: "I certainly believe I would have. I was out there again sometime last fall. There was a gouge mark at that place at that time." Though negative in form, the testimony of these witnesses is positive in substance.

"The testimony of a witness who was in such a position as to have had every opportunity to see and hear . . . that he did not see or hear something that he probably would have seen or heard if it had occurred is strong evidence that it did not occur." 20 Am. Jur., Evidence, p. 1040, sec. 1188. See also *Yanisch v. American Fidelity & Casualty Co.* 257 Wis. 462, 44 N. W. (2d) 267.

In order to come under the rule of the *Strnad Case,* appellant had the burden of proving that the gouge mark was an established physical fact at the time of the collision. He has failed to make any such positive showing.

It was within the competence of the jury to accept the sheriff's testimony as to the physical nonexistence of a gouge mark in appellant's lane of travel just after the collision. As to the testimony of the appellant as against that of respondent, the jury accepted that of respondent as against the uncertain testimony of the appellant. Respondent testified: "He came over to my side and hit me on the side of the front fender and slid back. That was the left front fender of my car, at the middle of the fender. He was on my own side of the road at the point of impact." The testimony of appellant on this same point was: "It *seems* as if . . . this

other automobile . . . suddenly pulled toward me into my lane of traffic."

Moreover, the jury had before it testimony and exhibits describing the condition of the cars immediately after the accident, and showing that there was no damage to the bumpers of either car; that the damage to respondent's car began at the fender just above the left front wheel, and that from that point on the body of his car was damaged all along the left side. The damage to appellant's car began with the left front wheel and headlight, both of which were virtually demolished; whereas the corresponding parts of respondent's car were almost intact. Under such circumstances the jury palpably could conclude that there was no head-on collision, and that appellant's car was at an angle veering toward the left when it hit respondent's car.

The second question on this appeal must be answered in the negative. The court did not err in admitting the written statement made by Robert Jones in evidence. The rule has been stated in 3 Jones, Evidence, Civil Cases (4th ed.), p. 1637, sec. 883, as follows:

"Where the witness, after having examined the memorandum, cannot testify to an existing knowledge of the facts, independently of the memorandum, but can testify that, at or about the time when the writing was made, he knew of its contents and of its truth or accuracy, it is held by some of the authorities that both the testimony of the witness and the contents of the memoranda are admissible. 'The two are the equivalent of a present positive statement of the witness, affirming the truth of the contents of the memorandum.' " See also *Schettler v. Jones,* 20 Wis. *412; *Bourda v. Jones,* 110 Wis. 52, 85 N. W. 671; *Hart v. Godkin,* 122 Wis. 646, 100 N. W. 1057; *Havenor v. State,* 125 Wis. 444, 104 N. W. 116.

Jones and his passengers were not available for the trial because of military service. Their testimony was taken by deposition. At the deposition of Robert Jones a statement

written in longhand by the insurance investigator during an interview with Jones was offered in evidence and became Exhibit X over appellant's objection. Appellant contends that it was prejudicial error to admit Exhibit X, under the rule that a party cannot impeach his own witness by conflicting statements made out of court, and because a proper foundation for admission had not been laid.

Jones identified the statement and verified its accuracy. He testified that the adjuster wrote the statement down as he (Jones) related to him what he knew of the accident. He testified that he read it over and signed it. Above his signature appears the following statement: "I have read the above page and a half and certify that it is true to the best of my knowledge and belief."

Jones' statement in Exhibit X that "I witnessed the accident from a car belonging to a friend of mine" is not necessarily a contradiction of his testimony at the deposition, where he testified, "I didn't see the actual collision." When asked on deposition: "And you know that you couldn't have thought at the time this statement was given to the insurance adjuster that you saw the actual collision," the witness replied: "It doesn't say there I saw it." The use of Exhibit X does not impeach respondent's own witness.

In regard to other questions asked at the deposition, the witness testified that he had no present recollection and allowed the statements made in Exhibit X to stand as his testimony. We consider that no prejudicial error was committed.

The learned trial judge properly admitted Exhibit X and ruled that the verdict was supported by the facts.

*By the Court.*—Judgment affirmed.