ZWEIFEL, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. MILWAUKEE AUTOMOBILE MUTUAL INSURANCE COMPANY and others, Defendants and Appellants: HARTFORD ACCIDENT & INDEMNITY COMPANY and another, Defendants and Respondents.

*September 7—October 5, 1965.*

For the defendants-appellants there was a brief and oral argument by *Crosby H. Summers* of Janesville.

For the plaintiffs-respondents there was a brief by *Hall & Griffith* of Madison, and oral argument by *Laurence W. Hall*.

For the defendants-respondents there was a brief by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs*.

Wilkie, J. Three general questions are presented on this appeal. The first concerns the negligence of each driver

and the jury's apportionment of the negligence as between Rowley (80 percent) and Propst (20 percent). The second involves the alleged improper closing arguments made by both respondents' counsel. The third pertains to whether or not there was prejudicial error committed during the trial on numerous points alleged by appellant.

*Negligence.*

On the night of December 21, 1960, Evansville high school played a basketball game at Cambridge. Among the Evansville youths attending the game were respondent Mary Zweifel, Kenneth Nelson, and Carol Felber, who went in a car driven by appellant Rowley, and Sharon Karroll who rode with Propst. Appellant left Cambridge a short time ahead of Propst after the game. Each traveled through Stoughton and on to Cooksville. After both cars had stopped at an intersection in Cooksville, Propst passed Rowley and pulled some distance ahead. The cars then proceeded south toward Evansville on Tolles road.

Tolles road runs north and south and is straight and blacktopped for several miles outside of Cooksville. It varies in width from 18 to 20 feet with a one-foot gravel shoulder. There is no center line. A few miles south of Cooksville is a slight hill. The Sawtelle farm is situated on the west side of the road at the bottom of the incline. On the east side of Tolles road, about 30 feet south of the Sawtelle driveway and three feet from the edge of the blacktop, was a guidepost marking the location of a culvert running under the road. Some 210 feet south of the guidepost was a driveway to another house (hereinafter tenant house). There was a ditch on the east side of the road which commenced at a point 125 feet north of the Sawtelle driveway and ran into a culvert which was under the tenant-house driveway.

The ditch varied in depth from three feet at its origin to five feet at the culvert. There was some snow off the road and in the ditch, but the pavement was clear and dry.

Appellant was traveling about 55 miles an hour as he came over the hill and noticed that he was gradually overtaking Propst who was going about 50 in his own lane. Appellant testified that he sounded his horn when he was about 50 feet behind Propst and then pulled out to pass. He further stated that when the front of his car was approximately even with the rear of Propst's car, the latter veered into the left lane—despite continued blasts on the horn—and forced him onto the shoulder. This occurred at a point 560 feet from the tenant house or 320 feet from the Sawtelle driveway. Appellant says that he elected to continue to make his pass but could not because Propst would not yield. He hit the guidepost and it spun up, broke his windshield, and caused him to lose control of his car. The car dropped into the ditch and kept going until it hit the culvert. Appellant never applied his brakes although respondent testified that she told him to. Rowley's story was substantiated for the most part by his three passengers, but Miss Zweifel thought that he sounded his horn for the first time when Rowley was alongside Propst and Propst began to swerve. There was no actual contact between the cars.

Propst, his passenger Sharon Karroll, and Mrs. Sawtelle all testified that they did not hear Rowley's horn. Propst did not remember deviating from his lane, but said that even if he had, there was still room for a car to pass. Miss Karroll and Propst both testified that Rowley's car was ahead of them when it hit the guidepost and that they saw the post fly over Rowley's car. Propst stopped at the culvert and took the occupants of the car to a doctor in Evansville. Rowley testified that during the trip Propst admitted crossing into the left lane, but this was denied by both Propst and

respondent. Respondent told Propst not to "blame yourself; it wasn't your fault." Rowley, Nelson, and Miss Felber attested to hearing a comment to this effect.

Both drivers were found causally negligent by the jury. These findings will not be upset if there is any credible evidence which, under any reasonable view, fairly admits of an inference supporting the finding.[1]

Rowley contends that on the facts he could only have been found negligent for failing to give an audible signal, and that the jury could have found him negligent in this respect only if they concluded that he did not sound a timely and audible signal that Propst, being reasonably attentive, could have heard. Citing *Kincaide v. Hardware Mut. Casualty Co.*[2] and *Frankland v. Peterson.*[3] Rowley argues that the testimony of Propst, Miss Karroll, and Mrs. Sawtelle, that they did not hear a horn, was negative and insufficient to create a jury issue in this regard in light of the positive testimony of himself and his three passengers that the horn was sounded.[4]

Although the jury could have concluded from all this testimony that Rowley sounded his horn the jury could have

[1] *St. Paul Fire & Marine Ins. Co. v. Burchard* (1964), 25 Wis. (2d) 288, 130 N. W. (2d) 866; *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83.

[2] (1962), 15 Wis. (2d) 474, 113 N. W. (2d) 147.

[3] (1955), 268 Wis. 394, 67 N. W. (2d) 865. The court stated at page 397: "To comply with the purpose of the statute the warning must be given in volume and at a time and place sufficient to inform a driver reasonably attentive to his own obligation to other users of the highway that an overtaking motorist intends to pass him and is about to do so." Quoted with approval in *Kincaide v. Hardware Mut. Casualty Co., supra,* footnote 2, at page 477. Instruction given here by the trial court contained this language. See Wis. J I—Civil, Part I, 1144.

[4] Relying on *Ryan v. La Crosse City R. Co.* (1900), 108 Wis. 122, 83 N. W. 770, and *Jordan v. Osborne* (1912), 147 Wis. 623, 133 N. W. 32.

concluded the opposite. The so-called affirmative testimony of Rowley and his three witnesses was not substantially the same. Indeed, although she agreed that appellant did sound his horn, respondent Zweifel testified that he did not do so until his car was abreast of Propst's. Thus, even assuming that appellant actually gave an audible signal, the jury could have found, because of the disputed testimony, that it was untimely.

It is clear, therefore, that there was a jury question on whether Rowley gave the required audible signal and there was credible evidence to support a jury finding of negligence in this respect.

Propst admits that there was a jury issue as to whether he invaded the left lane but argues that since the accident occurred after Rowley had actually pulled ahead of him, then any negligence on his part could not be causal. Appellant traveled 560 feet between the time he turned off the road and the time he hit the culvert. The evidence does show that the Propst vehicle was in the right lane and somewhat behind the Rowley vehicle when the latter struck the guidepost and went out of control. And Rowley admittedly chose to accelerate rather than brake as Miss Zweifel requested, in order to complete the pass. Thus, it would have been permissible for the jury to infer that Rowley, having passed Propst, was negligent in the way he managed his vehicle, and that this, and not his failure to signal or Propst's veering, was ultimately the sole cause of the accident. But the jury could also have believed that Propst, having heard Rowley's warning signal, set off the chain of events leading to the collision by forcing the latter off the road, but that Rowley's fateful decision to complete his pass was a more significant factor.

On these facts there was evidence on which the jury could rightfully determine that each driver bore some blame for the

accident and the apportionment of that negligence as between the two drivers was properly a question to be answered by the jury.[5]

### Closing Arguments to the Jury.

Appellant claims that improper argument was made to the jury in several respects. We need not consider whether or not the particular arguments were improper, and if improper, were prejudicial, for the reason that the appellant failed to move for a mistrial before the jury returned its verdict and, therefore, waived any complaint he might have in this regard.[6] Because of this waiver, we do not consider it necessary to detail the alleged improper arguments or to discuss the merits as to any of these arguments.

In *Kink v. Combs,*[7] an argument alleged to have been prejudicial was made by plaintiff's counsel during his opening statement to the jury. This court held that if he felt aggrieved, the defendant should have moved for mistrial at the close of the case.[8] Where a motion for mistrial is grounded on alleged improper and prejudicial argument to the jury, such a motion must be made at some time before the jury returns its verdict.

In connection with the assertions of appellant with respect to improper arguments by counsel, the return on this appeal includes the transcribed arguments of counsel for both respondents but no part of the argument by counsel for the appellant. Respondents have moved to strike that part of the return that contains their arguments. That motion is

[5] *Granger v. Mutual Service Casualty Ins. Co.* (1963), 19 Wis. (2d) 302, 120 N. W. (2d) 140; *Davis v. Skille* (1961), 12 Wis. (2d) 482, 107 N. W. (2d) 458; *Kraskey v. Johnson* (1954), 266 Wis. 201, 63 N. W. (2d) 112.

[6] *Kink v. Combs,* ante, p. 65, 135 N. W. (2d) 789.

[7] *Ibid.*

[8] *Id.* at page 72.

denied. The arguments are properly part of the record although, of course, this court on appeal is bound to be handicapped where a point is made of improper argument where a fair consideration must necessarily involve a review not only of arguments in the record, but those made by counsel, which arguments have not been transcribed and are not part of the record. Trial judges in certifying a trial record on appeal are permitted by affidavit or otherwise to make the record as complete as possible so a fair consideration may be given on appeal to alleged improper argument. It is noted that in this case the arguments of respondents' counsel were taken down and transcribed at the request of appellant. In view of the importance of oral arguments and the number of times on which our court has been asked recently to consider appeals based largely on alleged prejudicial arguments,[9] we are of the opinion that the whole problem of whether, and to what extent, oral arguments to the jury should be taken down and transcribed as part of each trial record is one that merits the attention of the judicial council. Every party requesting a reporter to take down or transcribe oral argument to a jury should make this request part of the trial record so that opposing counsel will be given an opportunity to know of this request and, if desired, to make a similar request of his own.

### Errors in Evidence and Instructions.

Appellant has numerous complaints in regard to either the introduction or rejection of certain evidence.

First, that it was error to allow respondent Mary Zweifel to testify on direct examination that she went to work

---

[9] *Kink v. Combs, supra,* footnote 6; *Andritsch v. Henschel* (1965), 27 Wis. (2d) 461, 134 N. W. (2d) 426; *Combs v. Peters* (1964), 23 Wis. (2d) 629, 127 N. W. (2d) 750, 129 N. W. (2d) 174; *Fields v. Creek* (1963), 21 Wis. (2d) 562, 124 N. W. (2d) 599.

after graduating from high school instead of going to college "because . . . my parents could not afford it." In *Kelly v. Southern Wisconsin R. Co.*[10] this court said that it was error to admit evidence of the financial condition of the plaintiff's father, but concluded that such an error was of "minor character" and not prejudicial under the circumstances. In the present case, any error resulting from admitting the testimony in question was likewise nonprejudicial. This is because the reply was directed to the financial condition of Mr. Zweifel, who was also a party plaintiff, and since the special-verdict question relating to his damages was answered by the court the jury could not have helped him had they wanted to. In addition, the jury was well instructed as to the items of damages that could be awarded to respondent. Appellant relies on *Dietz v. Goodman,*[11] but this case is distinguishable because the improper question and answer concerned the inability of plaintiff to obtain employment and this was held "together with [other] matters" to constitute error "under the circumstances."[12]

Second, that it was error to refuse to allow written statements taken by a deputy sheriff from respondent and Propst after the accident to be introduced into evidence. Portions of these statements dealt with whether Propst had swerved from his lane. It is true that where a witness does not have an independent recollection of the facts but has to rely on a memorandum to refresh his memory, the notes or written statement *may* be introduced into evidence as a part of his testimony.[13] Even if it was error not to admit the statements, and this is doubtful since the rule is couched in permissive

[10] (1913), 152 Wis. 328, 140 N. W. 60.
[11] (1950), 256 Wis. 370, 41 N. W. (2d) 208.
[12] Id. at page 373.
[13] *Neuenschwander v. Hornof* (1956), 273 Wis. 471, 78 N. W. (2d) 770; *Hart v. Godkin* (1904), 122 Wis. 646, 100 N. W. 1057; *Bourda v. Jones* (1901), 110 Wis. 52, 85 N. W. 671.

and not mandatory terms, the error is not prejudicial since the statements were read to the jury anyway.

Third, that the trial court erred in not allowing Propst to be impeached with his own unsigned statement. Shortly after the accident Propst gave a statement to appellant's counsel but refused to sign it. Appellant contends that since there is no distinction between oral and written declarations,[14] the statement is admissible as an admission against interest, and it was error to deny admission of the statement. It is not necessary to consider whether there was any error in this refusal since, in any event, there was no prejudice to the appellant because the information in the statement was elicited upon Propst's cross-examination.[15] For example, appellant wanted to show that Propst found Rowley's coming alongside "a complete surprise." This very point was brought out when appellant's counsel read portions of Propst's adverse into the record.

Fourth, that the trial court erred in refusing to permit appellant to show that Propst had been instructed by his insurance company not to sign any statements. Since this testimony had no material bearing on any of the issues in the case, it was not error to exclude it.

Fifth, that it was error for Propst's counsel to ask appellant, "[W]hile the doctor was treating you and about a week after the accident, were you in another accident?" Although Propst submits that the question was proper since Rowley had filed a cross complaint for damages for his injuries, and innocuous because there was no reference to Rowley's driving an automobile, it is apparent that this

---

[14] *Kraut v. State* (1938), 228 Wis. 386, 280 N. W. 327.

[15] *Knowles v. Stargel* (1952), 261 Wis. 106, 52 N. W. (2d) 387; *Gauthier v. Carbonneau* (1938), 226 Wis. 527, 277 N. W. 135; see also *Millay v. Milwaukee Automobile Mut. Ins. Co.* (1963), 19 Wis. (2d) 330, 120 N. W. (2d) 103; *Seyring v. Eschweiler* (1893), 85 Wis. 117, 55 N. W. 164.

question, asked without proper foundation, could well influence the jury to the end that they would doubt his driving ability. However, any error was not prejudicial. When it was developed that there were no injuries to Rowley in this other accident, the subject was dropped and the jury was immediately and carefully admonished to disregard the question because it had no bearing on the case. *Conwell v. Milwaukee Automobile Mut. Ins. Co.*,[16] cited by appellant, is distinguishable not only because it involved a long series of questions but the questions on their face were clearly of a more objectionable nature.

Sixth, that it was error to refuse to allow Propst to testify whether he reported the accident to his insurance company. Appellant contends that this ruling precluded him from determining whether Propst had ever given a statement to his insurance company. But appellant already knew that there was no such statement. Propst testified on his adverse examination that he didn't recall signing any statement and added at a conference, out of the presence of the jury, that he did not believe he had even made any statement. Propst's counsel denied knowledge of any statement.

Seventh, that it was error not to allow the jury to consider Rowley's hospital report. This record, which was received in evidence, contained the notation "old healed fract of nose with septal deviation" under the "Diagnosis" heading. Sec. 327.25 (2), Stats.,[17] permits introduction of hospital records except for portions which constitute a "medical opinion or diagnosis." Appellant offered to cover up the "Diagnosis" section but the trial court refused to let the report go to the jury. Whether or not an exhibit should be submitted to the jury is a matter within the discretion of the trial court.

[16] (1963), 19 Wis. (2d) 298, 120 N. W. (2d) 68.
[17] Created by Supreme Court Order, 17 Wis. (2d) xxiii.

Although there might be situations where it is imperative that the jury have the opportunity to study a report, this was not such a case. Appellant was not seriously injured and the facts relating to his injury and treatment were fully brought out in the testimony. Clearly, there was no abuse of discretion by the trial court on this matter.

Appellant contends that the trial court erred in instructing the jury that Propst could operate his vehicle oblivious to traffic behind him until he heard a signal. The jury was told: (1) That the front driver could assume that there was no car to his rear until he becomes aware of the car "by signal or otherwise;" (2) that the front driver was obliged to keep a lookout "to the rear if caution requires;" (3) that the front driver must look to the rear before operating his car in a manner which would create a hazard to the following vehicle; (4) that a driver cannot deviate from his course "until such movement can be made with reasonable safety;" and (5) that before any driver moves to the left on the highway he must "determine the presence, location, distance, and speed of any vehicle that might be affected." A consideration of the instructions as a whole [18] discloses that the jury was properly instructed.

We have reviewed the entire record of this week-long vigorously contested trial and are of the opinion that justice has been done.

*By the Court.*—Judgment affirmed with costs. Motion to strike portions of the transcript denied without costs.

---

[18] *Willenkamp v. Keeshin Transport System, Inc.* (1964), 23 Wis. (2d) 523, 127 N. W. (2d) 804.