RODRIGUEZ, by Guardian *ad litem*, Respondent, v. SLAT-
TERY, by Guardian *ad litem*, and another, Appellants.

*No. 229. Argued February 1, 1972.—Decided February 29, 1972.*
(Also reported in 194 N. W. 2d 817.)

166

For the appellants there were briefs by *Cannon, Mc-Laughlin, Herbon & Staudenmaier,* attorneys, and *L. William Staudenmaier* of counsel, all of Milwaukee, and oral argument by *L. William Staudenmaier.*

For the respondent there was a brief and oral argument by *John A. Udovc* of Milwaukee.

ROBERT W. HANSEN, J. While the appeal here is only as to the matter of damages, all claims of error relate to discretionary rulings by the trial court. It is contended, as to each point raised, that the trial court went beyond the outer limits of the area of judicial discretion. While we find neither error nor abuse of discretion in

any of the rulings challenged, we deal separately with each issue raised.

*Element of surprise.* Three weeks before trial, the plaintiff was examined by Dr. Lawrence Foster who determined that her injured leg was 1.5 cm. (⅝ inch) longer than her uninjured leg and a future bone-stapling operation would be required. Defense counsel was not informed of this examination until the first day of trial and claims surprise as to testimony of lengthened leg and future operation. Unlike the situation in the case relied upon by defendants,[1] here the complaint[2] and hospital records available to the defense[3] lessened any element of surprise. Still, the trial court found surprise involved but felt that it ". . . would be sufficiently rectified if he [defendant] was afforded an opportunity at that time for an examination—which he had." Where, in the words of the trial court, the ". . . defendant saw fit to accept the opportunity afforded by the Court for medical examination on behalf of the defendant. . ." we see no basis for claim of prejudicial error[4] and no abuse of discretion in the surprise-lessening procedure directed

---

[1] *Bublitz v. Lindstrom* (1962), 17 Wis. 2d 608, 117 N. W. 2d 636, in which this court upheld a trial court's granting of a new trial where an expert witness had testified as to a hearing loss not alleged in the complaint nor mentioned in medical reports.

[2] The complaint alleged: "Probable future permanent crippling and impairment of function and structure of left arm and left leg, with interference in proper growth."

[3] Hospital records indicated that, on May 15, 1967, the left leg was 8/10 of a centimeter shorter than the uninjured leg, and that, on April 23, 1968, the left leg was 8/10 of a centimeter longer than the uninjured leg.

[4] *See: Fredrickson v. Louisville Ladder Co.* (1971), 52 Wis. 2d 776, 784, 191 N. W. 2d 193, where, as to testimony of an expert witness whose existence was not made known prior to trial but where appellants were given permission to take the deposition of the witness during the trial, and did so, this court found that appellants had not been prejudiced.

by the trial court and taken advantage of by the defendant.

*Prior juror contact.* During the *voir dire* examination, no one knew that a Dr. David Shapiro would testify as a rebuttal defense witness. So no question was put to the jury panel as to whether any of the jurors knew or had had professional contacts with the doctor. When Dr. Shapiro was about to testify, one of the jurors signaled the court and informed the court that he had been examined by Dr. Shapiro in connection with a workmen's compensation case. (A company doctor had recommended that Dr. Shapiro make a collateral examination.) The juror stated that: (1) He did not know what Dr. Shapiro had reported with regard to the injury in the compensation case; (2) he had not seen Dr. Shapiro's report; (3) he was in no way dissatisfied with Dr. Shapiro; (4) he did not have a low regard or adverse opinion as to Dr. Shapiro's competence as a doctor; and (5) his contact with Dr. Shapiro would in no way affect his judgment as to the doctor's testimony. The defendant moved for a mistrial. The trial court denied the motion finding that there was not ". . . any substantiation for complaint, nor substantiation for a mistrial." We agree. The juror in question showed prompt and commendable honesty in informing the court and litigants of his brief earlier contact with the doctor. There is no reason to believe he was less honest in stating that his judgment would not be affected by the contact. The trial court ruling was a proper discretionary act.[5]

---

[5] *See: Cisneros v. Cities Service Oil Co.* (2d Cir. 1964), 334 Fed. 2d 232, 233, where in a similar situation involving a juror who had taken a course from an expert medical witness, the court held denial of mistrial was a justifiable discretionary ruling since ". . . The juror was thoroughly questioned by the judge in chambers in the presence of plaintiff's counsel who availed himself

*"Golden rule" argument.* Referring to defense counsel's statement in his closing argument that $4,000 would be a fair and reasonable damage award, plaintiff's counsel told the jury: ". . . If it was your seven-year-old, I don't think you would go for that. . . ." This has to be found to be what is termed the "golden rule" type of argument: asking the individual juror to put himself in another's place and decide what he would want for a particular injury or damage to himself or his child. Generally, it is frowned upon as inappropriate.[6] In this state it clearly is an improper argument to make to a jury.[7] Its use can warrant ordering a new trial,[8] but not always so.[9] Here the trial court could have ordered a mistrial; whether it should have involves a variety of factors including the nature of the case, the emphasis upon the improper measuring stick, the reference in relation to the entire argument, the likely impact or effect upon the jury. The trial court is in a particularly good "on-the-spot" position to evaluate these factors. Here the case against granting defendant's motion for mistrial

of the opportunity of also questioning the juror, and it then appeared that no prejudice to either party would result if the juror continued to sit."

[6] *See:* 53 Am. Jur., *Trial,* sec. 496, p. 401.

[7] *Larson v. Hanson* (1932), 207 Wis. 485, 489, 242 N. W. 184, where plaintiff's lawyer argued to the jury, " 'There is not a man of you that would trade his left hip for $30,000,' " this court stated: "This statement clearly constituted improper argument."

[8] *Id.* at page 489. In *Larson,* the trial court's grant of a new trial, although it had not specified the grounds for so doing, was affirmed.

[9] *See: McCaffrey v. Minneapolis, St. P. & S. S. M. Ry. Co.* (1936), 222 Wis. 311, 327, 328, 267 N. W. 326, 268 N. W. 872, where plaintiff's attorney had argued to the jury, " 'If you were placed in the position of Mrs. O'Brien, surrounded by her two children, would you have that kind of a husband taken away from you, upon payment of fifteen thousand dollars?' ", this court held the argument improper but did not reverse the jury verdict for the plaintiff.

on this ground is strengthened by the fact that, prior to plaintiff's counsel's reference to the jury stepping into plaintiff's or plaintiff's parents' shoes, the defendants' counsel had told the jury: ". . . Now, he said a seven-year-old doesn't know how to complain. I don't know if Mr. Udovc's [plaintiff's counsel] a father or not, but I happen to be one, and by golly, my seven-year-old knows how to get my attention, to let me know when she's got something ailing her. . . ." While obviously in a less sensitive area of the debate, the reference by defendants' counsel at least initiated the unfortunate personalizing of the matters before the jury for consideration. We find on this record no abuse of discretion in the denial of a motion for mistrial.

*Form of questions.* The claim of error here is that plaintiff's attorney was permitted to ask questions of a medical witness that did not incorporate the required standard of certainty. Almost entirely they deal with questions asked about permanent disability and future anticipatable difficulties with the injured leg. For example, as to the bone-lengthening consequence of the leg injury, the doctor was asked, "What effect, if any, does that have on the pelvis?" While objection to the form of such question was made and overruled, a later question asked, "Doctor, do you have an opinion to a reasonable medical certainty as to whether or not the pelvis of the minor plaintiff here is tilted as a result of the accident?" The doctor's answer: "I am absolutely certain." On appeal, the question is not merely whether a particular question was improperly phrased, but also whether such question, viewed as part of an entire record, created a situation prejudicial to the case of the objecting party.[10] As this court has set the standard on review: ". . . This court will not reverse unless it clearly

[10] *See: State v. Muhammad* (1968), 41 Wis. 2d 12, 24, 162 N. W. 2d 567.

appears that the trial court abused its discretion and that the error affected a substantial right of the complaining party and probably affected the result of the trial." [11] Here we find neither substantial prejudice nor substantial effect upon outcome.

*Examination of records.* The trial court permitted certain exhibits to be taken to the jury room and used by the jury during their deliberations. They were hospital reports, X rays and medical diagrams. In a case where it was argued that the trial court erred in not permitting a hospital report to go to the jury room, this court held: "Whether or not an exhibit should be submitted to the jury is a matter within the discretion of the trial court." [12] In that case this court upheld the trial court not sending the hospital record to the jury room, noting that ". . . the facts relating to his injury and treatment were fully brought out by the testimony. . ." [13] but noted that there well might be ". . . situations where it is imperative that the jury have the opportunity to study a report. . . ." [14] The case before us is one. As the trial court stated: "I think fair play to this plaintiff requires me to . . . [allow the records in the jury room], in view of the fact that she is now ten years of age, was seven years of age at the time of the accident, and has quite forthrightly repeatedly answered that she cannot remember her postaccident condition and her convalescence and

[11] *Neider v. Spoehr* (1969), 41 Wis. 2d 610, 618, 165 N. W. 2d 171, referring to conduct of cross-examination. *See also: Hankwitz v. Barrett* (1910), 143 Wis. 639, 644, 128 N. W. 430, referring to leading questions, holding: ". . . the trial court is vested with a large discretion as to when it is proper to allow leading questions, and the exercise of that discretion will not be disturbed except when it is clearly abused."

[12] *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. 2d 249, 260, 137 N. W. 2d 6.

[13] *Id.* at page 261.

[14] *Id.* at page 261.

describe the nature of her complaints, if any she had at that time. . . ." Additionally, the trial court took great pains to inform both counsel that he was going to allow these reports into the jury room so they could present their cases and make their arguments with this fact in mind. In this case, on this record, no error and no abuse of discretion is present.

*Amount of damages.* The jury awarded the plaintiff $26,000. Probably, but not provably, this appeal was taken primarily to challenge the amount of the verdict. Defendants moved the trial court for a new trial "because the damages awarded are excessive," and, alternatively, for an order changing the award for future personal disability "from $6,000 to zero," and jury answer on personal injuries "from $20,000 to such lesser reasonable amount as is supported by the credible evidence." The trial court denied the motion.

In this state it has been made clear that the amount of damages to be awarded in a personal injury action is "largely in the discretion of the jury" with an award to be set aside ". . . only if so excessive as to evidence that it resulted from passion, prejudice, corruption, or disregard of the evidence or the applicable law. . . ." [15] The initial determination of the adequacy or excessiveness of an award is to be made by the trial court on motion after verdict and the trial court must ". . . then view the evidence in the light most favorable to the jury verdict and determine if there is any credible evidence [to support it] . . . ." [16] The sole question on subsequent appeal to this court is ". . . simply whether the

[15] *Page v. American Family Mut. Ins. Co.* (1969), 42 Wis. 2d 671, 681, 168 N. W. 2d 65.

[16] *Gervais v. Kostin* (1970), 48 Wis. 2d 190, 201, 179 N. W. 2d 828.

trial court abused its discretion in concluding that the credible evidence supported the verdict . . . ." [17]

What is that credible evidence relating to injuries sustained that the jury in this case was entitled to consider? The trial court summarized the testimony presented thusly:

". . . It was alleged and established that the girl was thrown 40 to 50 feet in the air by the automobile. She sustained a fracture to the left humerus, to the left femur, and a fracture of the pelvis. She has a thickening and bowing of the left humerus. She has a thickening of the left leg which is a part of the callus formation, as well as the bone, now, and she has a left femur that obviously is a minimum of one centimeter overlong . . . . She has a tilt to her pelvis, and there is the prospect of some scoliosis developing therefrom, at least according to the testimony of Dr. Foster. Dr. Foster also suggested an operation to the left femur to retard the growth in order to avoid a permanent tilt to the pelvis, and to alleviate or eliminate the development of scoliosis in the future.

". . . She was treated at great length. Her stay in the hospital was lengthy. . . .

"With the seriousness of the three fractures, the extended treatment, the fact that she was thrown a great distance and had abrasions and contusions to many parts of her body, demonstrate that the award made by the jury was not at all excessive in awarding $20,000 for pain and suffering to date.

". . . [H]er problem with her leg, plus the problem with the arm, suggests that the award of $6,000 for future disability is, if anything, modest, rather than excessive."

If we had our druthers, as the folk saying puts it, we might prefer a verdict that would have been somewhat lower as to pain and suffering and certainly higher as to the award for future disability. However, the question before us is ". . . not what the supreme court would have

---

[17] *Id.* at page 201.

awarded had the question of damages been before it initially. . . ." [18] Viewing the evidence in the light most favorable to the jury verdict, we cannot conclude that the trial court abused its discretion in finding that credible evidence supported the award of $20,000 for injuries to date of verdict and $6,000 for future consequences and disability. We do not follow the briefs of both parties in analyzing other damage awards in personal injuries, finding this case distinguished by the age of the plaintiff and the extensive nature of the various injuries sustained. [19] On the facts in this record, the trial court found the jury awards as to damages not excessive; on this record we affirm its finding and consequent denial of defendants' motion for a new trial or reduction in the amounts set by the jury. As to this and all other grounds for seeking a new trial, either as a matter of law or in the interest of justice, we restate that a trial court's discretionary refusal to grant a new trial is not to be reversed in the absence of a clear showing of an abuse of judicial discretion. [20] Such showing was not here made.

*By the Court.*—Order and judgment affirmed with costs, including printing of briefs, allowed to the respondent.

[18] *Id.* at page 201.

[19] *See: Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 493, 120 N. W. 2d 692, holding: ". . . a comparison with other verdicts at best can be an imperfect analogy affording some guidelines to the solution but not necessarily determining the result."

[20] *Chille v. Howell* (1967), 34 Wis. 2d 491, 494, 149 N. W. 2d 600.