STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert L. PERRY, Defendant-Appellant. †

Court of Appeals

*No. 84–875–CR. Submitted on briefs October 9, 1985.—*
*Decided December 26, 1985.*
(Also reported in 381 N.W.2d 609.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant the cause was submitted on the briefs of *Stephen J. Eisenberg* and *Mark A. Eisenberg* and *Eisenberg Law Offices* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *William L. Gansner,* assistant attorney general.

Before Dykman, Eich and Cane, JJ.

EICH, J.    Robert Perry appeals from a judgment convicting him of burglary, robbery, and injury by conduct regardless of life in violation of secs. 943.10(1)(a), 943.32(1)(a) and 940.23, Stats. The dispositive issue is whether the trial transcript, substantial portions of which are missing, is sufficient to permit proper consideration of the appeal. We answer the question in the

negative and therefore reverse and remand for a new trial.

Appellant's trial lasted approximately eight days. During the morning sessions of the final two days, a substitute court reporter reported the proceedings. After the trial, the reporter moved to a different city, leaving her notes behind. When a trial transcript was ordered, the notes were mailed to the reporter for transcription. The notes were lost in the mail and, when finally located by postal authorities, were incomplete and in "a jumbled mess."

The reporter pieced together what she could but significant portions of the transcript are missing. The docket entries for the first of the two days indicate that arguments on motions began at 9:05 a.m., after which eleven defense witnesses testified, all before the noon recess. Only the testimony of four of these witnesses is complete. The testimony of two is missing altogether, and only portions of the testimony of the remaining five witnesses have been salvaged. On the following day the trial resumed with admission of exhibits and the state's closing argument. The available transcripts, however, include only the first seven, middle five and final fifteen pages of the state's argument. Six other pages contain random pieces of either closing argument or discussion of evidentiary matters. It is not known how many pages are missing. The problem is compounded by the fact that both counsel on appeal are new to the case; neither participated in the trial.

Appellant's postconviction motions included a request for a new trial on grounds that the defects in the transcript effectively denied him the right to appeal the conviction. The trial court, based on its memory of the year-old trial, ruled that the record was sufficient

to "provide the appellate court with a basis of [sic] reviewing the entire record in the matter" and denied all postconviction motions.[1]

It goes without saying that an adequate record is necessary for review of the issues raised on appeal. However, lack of a verbatim transcript does not amount to denial of the right to appeal when a suitable alternative is available, such as a statement of facts agreed to by both sides, a full narrative based, perhaps, on the trial judge's minutes taken during trial, or a bystander's bill of exceptions. *Mayer v. Chicago,* 404 U.S. 189, 194 (1971); *Draper v. Washington,* 372 U.S. 487, 495 (1963). In this case no suitable alternative is available.[2]

---

[1] The trial court's ruling implies a determination that appellate counsel would not need the missing record for an effective appeal. The assumption that a court can judge what is or what is not useful to a defense attorney has been rejected by the Supreme Court in another context. It is not "realistic to assume that the trial court's judgment as to the utility of material for . . . legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." (Footnote omitted.) *Dennis v. United States,* 384 U.S. 855, 874–75 (1966).

[2] We have considered *State v. DeLeon,* No. 84–1949–CR, slip op. (Wis. Ct. App., Oct. 23, 1985), which sets forth a recommended procedure to be followed where a trial transcript is defective or incomplete. The procedure envisions the following steps: (1) a facially valid claim of error occurring "during the missing portion of the trial;" (2) determination by the trial court as to "whether the missing portion can be reconstructed;" (3) if "the attempt at reconstruction is insurmountable," a new trial should be ordered; if not (4) the parties should attempt to agree on a "joint . . . statement" of the missing testimony, which the court may "modify . . . to make the

The state argues first that appellant has waived his right to challenge the adequacy of the transcript because he failed to follow available procedures to remedy the defects—a motion to the trial court to correct the record. A majority of jurisdictions will consider a motion for new trial based on transcript deficiencies

record 'conform to the truth;' " and, (5) "[i]f a dispute remains," the trial court—through the use of its own memory, consultation with counsel and other sources, affidavits of the parties and/or further hearings—must "establish what the testimony was." If the trial court is not satisfied beyond a reasonable doubt (in a criminal case) that "the missing testimony has been properly reconstructed . . . the court should set aside the judgment and order a new trial." *Id.* at 7–10.

*DeLeon* was a sexual assault case, tried to the court without a jury, where reporter's notes comprising fifteen minutes of testimony were lost. The trial court denied the defendant's motion for a new trial and instead had the "missing" witnesses located, recalled and examined, together with the prosecutor and defense counsel. The trial court then "compared the various inconsistencies in the testimony *in light of the credibility of the witnesses* and made findings as to the substance of the missing testimony." (Emphasis added.)

In this case, any assessment of the credibility of the witnesses was for the jury—not the court. In addition, approximately one full day's proceedings are either missing or garbled, and these defects involve the testimony of seven defense witnesses and a part of the prosecutor's closing argument—portions of which form the basis for appellant's claim of prosecutorial misconduct. Moreover, it is now nearly four years since the alleged offense occurred and two and one-half years since the trial; and, neither appellant's counsel nor present counsel for the state was present at trial.

Under these circumstances, we conclude that a remand to the trial court with directions to follow the five-step procedure outlined in *DeLeon* would be fruitless. *DeLeon* should be limited to its facts. We therefore consider the issues raised by the parties—issues which were neither raised nor considered by the court in *DeLeon*.

only if the appellant first establishes that available methods for reconstructing the record are inadequate: Annot., 107 A.L.R. 603 (1937); *State v. Hart,* 514 P.2d 1243, 1245 (Ariz. 1973); *People v. Apalatequi,* 147 Cal. Rptr. 473, 475 (1978); *State v. Vitale,* 460 A.2d 961, 965 (Conn. 1983); *Yancey v. State,* 267 So.2d 836, 836–37 (Fla. Ct. App. 1972); *State v. Stafford,* 573 P.2d 970, 972 (Kan. 1977); *Smith v. State,* 433 A.2d 1143, 1149 (Md. 1981); *State v. Borden,* 605 S.W.2d 88, 91–92 (Mo. 1980); *State v. Neely,* 204 S.E.2d 531, 532 (N.C. Ct. App. 1974); *State v. Moore,* 534 P.2d 1124, 1126 (N.M. Ct. App. 1975).

In nearly all of these cases, however, there was a statutory or other well-defined and longstanding procedure which a party was required to follow in the trial court to correct claimed inadequacies in the transcript. In Wisconsin, the matter is governed wholly by statute, and the statutory procedure is permissive rather than mandatory.

The only reported Wisconsin cases dealing with missing or inadequate transcripts do, as the state suggests, adopt a similar "waiver" rule—that a corrective motion is a condition precedent to raising the issue on appeal. *Peterson v. State,* 73 Wis.2d 417, 422–23, 243 N.W.2d 491, 495 (1976); *State v. Prober,* 87 Wis.2d 423, 438–40, 275 N.W.2d 123, 129 (Ct. App. 1978), *rev'd on other grounds,* 98 Wis.2d 345, 297 N.W.2d 1 (1980). However, both cases were decided under a then-existing statute requiring any party seeking amendment or correction of a transcript to bring an appropri-

ate motion in the trial court.[3] In the absence of such a motion, the transcript as it existed was deemed approved for certification to the appellate court. The statute was repealed in 1978 and replaced with sec. 809.15(3), Stats., which provides: "A party who believes the record, including the transcript of the reporter's notes, is defective or does not accurately reflect what occurred in the trial court *may* move the court in which the record is located to correct the record" (emphasis added).

The state's view that sec. 809.15(3), Stats., is a mandatory statute is erroneous. It plainly states that an appellant "may move the court . . . to correct the record," and the word "may" is generally construed as permissive. *In re Marriage of Bouchard v. Bouchard,* 107 Wis.2d 632, 633–34, 321 N.W.2d 330, 331 (Ct. App. 1982). Because the statutory procedures for correction of an inadequate transcript are no longer mandatory, appellant has not waived his right to seek a new trial on that ground.[4]

---

[3] Section 274.117, Stats. (1973), later renumbered sec. 817.117, Stats., provided that "any party may serve proposed amendments upon all other parties. If no proposed amendments are served within 20 days after service of the transcript, the transcript *shall* be deemed approved and *shall* be filed with the clerk . . . with . . . an affidavit that no proposed amendments have been served." (Emphasis added.)

[4] In the absence of a mandatory statute, some jurisdictions nonetheless require appellant to prove that reconstruction methods are inadequate before seeking a new trial. *Commonwealth v. Harris,* 379 N.E.2d 1073, 1075 (Mass. 1978); *People v. Glass,* 372 N.E.2d 24, 25 (N.Y. 1977). Based on facts similar to the instant case, however, the Arizona court, in *State v. Masters,* 494 P.2d 1319 (Ariz. 1972), noted that a procedural remedy provided appellant with a

One of appellant's grounds for relief is a claim of prosecutorial misconduct. He has cited a number of instances in the existing record which he believes give credence to this claim, and he argues that "[s]ince a substantial part of the State's final argument is missing . . . , it is impossible to determine whether other examples of prosecutorial misconduct occurred."

■

"[W]here the grounds of appeal . . . make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript or an 'alternative' will suffice for an effective appeal on those grounds." *Mayer,* 404 U.S. at 195. To determine whether appellant has shown a "colorable need," we consider whether it is impossible to pass upon the issue without direct study of relevant portions of the record. *Id.* at 198, n.9. In Wisconsin, alleged prosecutorial misconduct in closing argument is an issue requiring such study. "As a general rule, this court will not consider an alleged error in closing argument absent a showing in the record of what was said." *Smith v. State,* 65 Wis.2d 51, 54, 221 N.W.2d 687, 689 (1974). The reasons for not undertaking review where the exact remarks do not appear in the record are obvious: "Slight changes in wording, emphasis and context may materially alter the perceived substance of the re-

means to obtain a suitable transcript, but because the rule provided that "the appellant *may* [attempt to reconstruct the proceedings] from the best available means," the court would not mandate its use. *Id.* at 1322. It may be that we will, in some situations, require that an appellant seek to reconstruct the record pursuant to sec. 809.15(3), Stats., before we will consider ordering a new trial. On the particular facts of this case, however, we are persuaded that an effort at reconstruction would be futile.

marks." *Id.* at 54, 221 N.W.2d at 689. *See also Zweifel v. Milwaukee Automobile Mut. Ins. Co.,* 28 Wis.2d 249, 257, 137 N.W.2d 6, 11 (1965).[5] Although the missing portion of the transcript may be only a relatively small part of the record—less than one-eighth of the entire trial—it is a crucial portion, for a prosecutor's prejudicial comment in closing argument has long been grounds for reversal. *State v. Albright,* 98 Wis.2d 663, 677–78, 298 N.W.2d 196, 204 (Ct. App. 1980); *Hoppe v. State,* 74 Wis.2d 107, 120, 246 N.W.2d 122, 130 (1976).

The state argues, however, that "[b]y failing to point to any specific prejudice . . . [appellant] has defaulted on his obligation of showing 'a colorable need for a complete transcript.' " The argument begs the question. "If appellant could specifically quote or describe the alleged prejudicial portions of the closing argument, and assuming that the prosecution accepted the defense's version, there would be no need for the missing transcript to insure meaningful appellate review." *Commonwealth v. Shields,* 383 A.2d 844, 846 (Pa. 1978). We do not know whether appellant can establish his claim of prosecutorial misconduct because the entire closing argument is not available for our inspection. We note, too, that several jurisdictions have held that an incomplete transcript warrants a new trial where the party seeking relief is without fault and where a new trial is essential to the protection of his or her rights, regardless of whether any specific error has been alleged. *United States v. Selva,* 559 F.2d 1303 (5th Cir. 1977); *State v. Ford,* 338 S.2d 107 (La. 1976); *Colwell v. State,* 477 P.2d 398 (Okla. Crim. App. 1969); *Commonwealth v. Shields,* 383 A.2d 844 (Pa. 1978);

---

[5] In both *Smith* and *Zweifel,* the court refused to undertake review on waiver grounds which are not present here.

*Gamble v. State,* 590 S.W.2d 507 (Tex. Crim. App. 1979); *State ex rel. Kisner v. Fox,* 267 S.E.2d 451 (W. Va. 1980).

The fact that appellant's counsel on appeal did not represent him at trial bears upon the need for a complete transcript. "[W]hen, as here, new counsel represents the [appellant], how can he faithfully discharge the obligation which the court has placed on him unless he can read the entire transcript?" *Hardy v. United States,* 375 U.S. 277, 280 (1964). "Recollections and notes of trial counsel and of others are apt to be faulty and incomplete. Frequently, issues simply cannot even be seen—let alone assessed—without reading an accurate transcript." *Id.* at 280 n.3, quoting Boskey, *The Right to Counsel in Appellate Proceedings,* 45 Minn. L. Rev. 783, 792–93 (1961).[6] Moreover, "[a]s any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law." (Footnote omitted.) *Hardy* at 288 (Goldberg, J. concurring).[7]

---

[6] *Hardy,* like *Mayer v. Chicago, supra,* involved the right of an indigent to equal access to the appellate process. The reasoning of those cases, however, is applicable here.

[7] Federal courts, notably the fifth circuit, have been especially vigilant in requiring reversal even if no prejudice has been alleged when appellate counsel did not try the case. *See United States v. Renton,* 700 F.2d 154, 157 (5th Cir. 1983); *United States v. Colmenares-Hernandez,* 659 F.2d 39, 43 (5th Cir.) *cert. denied,* 454 U.S. 1127 (1981); *United States v. Brumley,* 560 F.2d 1268, 1281 (5th Cir. 1977); and *United States v. Selva,* 559 F.2d at 1306.

We do not advocate a mechanistic approach to the problem of inadequacies in a trial transcript. An appellant will not be entitled to a new trial in every case where the transcript is incomplete or erroneous. "A slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal would not cause us to reverse defendant's conviction." *Ford,* 338 So.2d at 110. Where, as here, however, through no fault of his own, the transcript is defective and appellant has shown a "colorable need" for a full, accurate transcript in order to effectively prosecute an appeal and where it appears that attempts to reconstruct the record will prove futile, we will grant a new trial.

The loss or destruction of a court reporter's notes is an uncommon occurrence. As such it randomly burdens isolated appellants, denying them adequate appellate review. It does not advance the cause of justice to require these appellants to proceed with such a handicap. "It is far better that a defendant be retried than that the state should permit itself to be subject to the criticism that it has denied an appellant a fair and adequate record on appeal." *In re Steven B.,* 598 P.2d 480, 485 (Cal. 1979), quoting *People v. Fuentes,* 282 P.2d 524, 529 (Cal. Ct. App. 1955) (Shinn, J. concurring).

■

Appellant has done everything that reasonably could be expected in order to perfect his appeal. Under the present state of things, his contentions are unreviewable. He has established a colorable need for the full transcript, and to deny him a new trial under such circumstances would amount to a denial of his right to appeal.

*By the Court.*—Judgment reversed and cause remanded. New trial ordered.