STATE of Wisconsin, Plaintiff-Respondent,

v.

William E. LEHMAN, Defendant-Appellant.

Supreme Court

*No. 81–1253–CR. Argued April 26, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 212.)

For the defendant-appellant there were briefs and oral argument by *Mary E. Waitrovich,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Chris Heikenen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J. The validity of a jury verdict is challenged in this review on the ground that during the jury deliberations a regular juror was discharged and, over defendant's objection, an alternate juror who previously had been discharged by the circuit court joined the jury and participated in the jury's deliberations and verdict. In its memorandum decision on motions after verdict, the circuit court for Douglas county, Arthur A. Cirilli, Circuit Judge, apparently concluded that it had erred in allowing the alternate juror to join the jury mid-way in the jury deliberations but that the error was harmless. The defendant appealed from the judgment of conviction and from the order denying his motion for a new trial, and this court granted defendant's petition to bypass the court of appeals. Sec. 808.05 (1), sec. (Rule) 809.60, Stats. 1979–80. We hold that because no statute or rule expressly authorizes a circuit court to substitute an alternate juror during jury deliberations for a juror who has been discharged, the circuit court committed error in making the substitution and that the error constitutes ground for reversal.

I.

The facts are not in dispute. The defendant was charged with numerous offenses, including robbery, armed robbery, escape, endangering safety by conduct

regardless of life and auto theft. The defendant plead not guilty and not guilty by reason of mental disease or defect. Prior to the completion of the guilt phase of the bifurcated trial, several charges were dismissed, and the defendant changed his plea to guilty to the remaining charges.

The second phase of the bifurcated trial dealing with the plea not guilty by reason of mental disease or defect commenced. The second phase of the trial was brief, lasting only about four and one half hours.[1] Thirteen jurors, twelve regular jurors and one alternate juror, heard all the evidence and were instructed in the law by the circuit court. At 4:25 p.m. when the jury retired to deliberate, the circuit court advised the alternate juror as follows: "You don't have to go up [to the jury room]. You have got to hang around for a while until they come back, but you don't go upstairs. Okay."

The jury deliberated from 4:25 p.m. until dinner. According to the circuit court's memorandum decision the jurors went to dinner at about 6 p.m. During this stage of the deliberations, one of the jurors apparently became ill. Although it appears from the record that the clerk's office knew that one of the jurors was ill before the jurors went to dinner, the record does not indicate when or by whom the juror was discharged. The record is

---

[1] The second phase of the trial began at 9:00 a.m. and adjourned from 9:45 a.m. to 11:03 a.m. to await the arrival of a witness. The jury heard the witness's testimony from 11:03 a.m. until 12:15 p.m. when the trial was adjourned for lunch. Lunch recess ended at 1:30 p.m., and the court reconvened at that time. The defendant requested a conference in chambers. The conference was held, but there is no indication how long it took. The testimony resumed after the conference. Counsel made closing statements and the jury was instructed. At 4:25 p.m., according to the court reporter's transcript, the jury began deliberations. Thus the actual trial time was very short—about four hours and twenty-two minutes— 9:00 a.m.–9:45 a.m., 11:03 a.m.–12:15 p.m., and 2:00 p.m. (estimated time)–4:25 p.m.

silent as to whether that juror was discharged before or at the dinner break and whether only eleven jurors conferred for some time before dinner. The record is silent as to whether the circuit judge questioned the juror prior to her discharge. According to the docket entries, the jurors returned from dinner at about 7:10 p.m., and retired for further deliberations at about 7:20 p.m.

At the hearing on defendant's motion for a new trial, the alternate juror described his activities from 4:25 p.m. to 7:10 p.m. as follows: He remained in the courtroom for about forty-five minutes and was then discharged from jury duty by the circuit judge. He drove directly home, approximately twenty-six miles from the courthouse. He estimated his driving time as forty-five to fifty minutes. Upon arriving home he received a phone call from a woman (whom he supposed worked in the clerk's office) and was asked to return to the courthouse because one of the jurors had been taken ill. (On the basis of the alternate juror's testimony, the telephone call appears to have come at about 5:55 p.m.) He spent about ten minutes at home, going to the bathroom and getting a sandwich. He then drove back to the courthouse and went to the courtroom, which was empty. (Thus it appears that he returned to the courtroom at about 6:50 p.m.) He spoke to no one about the case after he was released from jury duty and before he entered the jury room. No one told him what to do when he arrived in the courtroom. He did what he assumed he was supposed to do. He just waited, and when the jurors returned to the courtroom after dinner he just followed them into the jury room and joined the deliberations. He was not questioned by either the state's or defendant's attorney or the circuit court prior to his retiring with the jury, and neither he nor the other jurors were given any further instructions by the court.

Some time after the jury came back from dinner (the exact time is not clear in the record) and while the

alternate juror was deliberating with the original jurors, the circuit court judge held a conference in chambers with both counsel and the defendant. The circuit judge told those present that a juror had been taken ill and had gone home. The circuit judge proposed that the alternate juror join the jury deliberations. The circuit judge did not advise counsel that the alternate juror had been discharged and had driven to and from his home, but merely said: "One of the jurors got sick and she was sent home, which means we only have eleven jurors. We do have a thirteenth juror we kept as a substitute. It's my idea we should send him into deliberations with the others. That's the purpose of having him." The defense counsel and defendant objected to the substitution of the alternate juror and were unwilling to stipulate to a jury of eleven persons. The circuit court "ordered that the thirteenth juror will take the place of the juror who became ill and he will go into deliberations with the others." Unbeknownst to the circuit court and counsel, the alternate juror had already joined the jury deliberations.

The circuit court then asked the jury to be brought to the courtroom to answer questions which the jury had sent to the court. Neither the time the jury submitted the questions nor the content of the questions appears in the record before us. The record does not explain whether eleven or twelve jurors formulated the questions and, if twelve, whether the twelfth was the discharged juror or the alternate juror.

At about 8:07 p.m., according to the circuit court's memorandum decision, the jury returned to the courtroom, and the foreman advised the circuit court that "we do not agree on some of the questions. We are at a stalemate." There was an unreported bench conference after which the circuit court told the jurors that the questions being asked were irrelevant, that they had their instructions, and that they should go back and deliberate. At 8:11 p.m., according to the docket entries, the jury

retired for further deliberations. Thirty-four minutes later, at 8:45 p.m., according to the court reporter's transcript, the jury returned with its verdict. The jury found that at the time the crimes were committed the defendant did not suffer from a mental disease. Thus the jury deliberated for about one hour and thirty-five minutes (4:25 p.m. to 6:00 p.m.) before the alternate juror joined the deliberations and for about one hour and twenty-one minutes (7:20 p.m. to 8:07 p.m.; 8:11 p.m. to 8:45 p.m.) after the alternate juror joined the jury.

The defendant presents two arguments for reversal of the judgment of conviction and the order denying post-conviction relief. The defendant argues that the circuit court erred when the regular juror was discharged during jury deliberations without the court making inquiry on the record into the necessity for the discharge. The defendant also asserts that the circuit court erred in substituting the alternate juror after jury deliberations had begun.

## II.

We first consider the defendant's assertion that the circuit court erred in discharging a regular juror without making inquiry on the record into the necessity for the discharge or without explaining on the record the reasons for the discharge.[2] The defendant bases this claim of

[2] The state argues that the defendant has waived any errors in the discharge of the regular juror by not objecting at trial. The regular juror was discharged *ex parte*, and the defendant did not have the opportunity to enter a contemporaneous objection thereto. The defendant objected immediately to the substitution of the alternate juror, and under the circumstances of this case this objection was sufficient to raise the question of the propriety of the discharge of the regular juror and to preserve the question for review by an appellate court. Accordingly we conclude that the defendant has not waived his objection to the discharge of the regular juror.

error on sec. 972.02, Stats. 1979–80, sec. 7, Art. I of the state constitution[3] and the sixth amendment and the due

[3] Sec. 7, Art. I, of the Wisconsin constitution guarantees a defendant in a criminal prosecution, by indictment or information, a speedy public trial by an impartial jury. Sec. 7, Art. I, provides as follows:

"In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel, to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; *and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury* of the county or district wherein the offenses shall have been committed; which county or district shall have been previously ascertained by law." (Emphasis supplied.)

In *State ex rel. Sauk County D.A. v. Gollmar*, 32 Wis. 2d 406, 409–10, 145 N.W.2d 670 (1966), this court discussed sec. 7, Art. I, of the Wisconsin constitution as follows:

"The jury contemplated by this section is the type of jury recognized by the common law, *i.e.*, a 12-man jury.

'. . . this section secures to the accused in all criminal prosecutions a *right of trial* by jury, . . . the jury mentioned in said section means a jury of twelve impartial men,—such a jury as was known to the common law and to the courts of the territory of Wisconsin before the state was organized.'[1]

"It has been held that the right to a jury trial under sec. 7, art. I, applied to misdemeanors as well as felonies.[2]

"This court has also recognized on several occasions that jury trials in criminal cases cannot be waived absent statutory authorization, there being no provision for waiver in sec. 7, art. I, Wisconsin constitution."[3]

"[1] *Bennett v. State* (1883), 57 Wis. 69, 75, 14 N.W. 912. See also *Norval v. Rice* (1853), 2 Wis. 17 (*22) ; *Jennings v. State* (1908), 134 Wis. 307, 114 N.W. 492; Conway, Is Criminal or Civil Procedure Proper For Enforcement of Traffic Laws? Part I, 1959 Wisconsin Law Review, 418, 424.

"[2] *State v. Lockwood* (1877), 43 Wis. 403; *State v. Smith* (1924), 184 Wis. 664, 200 N.W. 638; *State v. Slowe* (1939), 230 Wis. 406, 284 N.W. 4.

process clause of the fourteenth amendment of the federal constitution.[4]

"[3] *In re Staff* (1885), 63 Wis. 285, 23 N.W. 587; *Jennings v. State, supra,* footnote 1, at page 310; *Oborn v. State* (1910), 143 Wis. 249, 259, 126 N.W. 737; *State v. Smith, supra,* footnote 2; *State ex rel. Derber v. Skaff* (1964), 22 Wis. (2d) 269, 272, 125 N.W.(2d) 561. See also Wisconsin Criminal Procedure, 1966 Wisconsin Law Review, 430, 476."

In *Hammill v. State,* 89 Wis. 2d 404, 407, 278 N.W.2d 821 (1979), we said:

"Under the United States constitution a criminal defendant in a state court is guaranteed an impartial jury by the Sixth Amendment as applied to the states through the Fourteenth Amendment. Principles of due process also guarantee a defendant a fair trial by a panel of impartial jurors. In Wisconsin a defendant is entitled to a trial by an impartial jury as a matter of state constitutional law under sec. 7, art. I, of the Wisconsin Constitution." (notes omitted)

[4] The sixth and fourteenth amendments to the federal Constitution provide as follows:

"ARTICLE VI. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

"ARTICLE XIV. Section 1. . . . nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ."

Although the sixth and fourteenth amendments to the federal Constitution require trial by jury in all serious state criminal cases, *Duncan v. Louisiana,* 391 U.S. 145, 156 (1968), the right to jury trial in federal and state prosecutions may differ. The jury system may vary from state to state without violating sixth amendment guarantees. Thus, for example, the states are not constitutionally bound to employ twelve-member juries in serious criminal cases, *Williams v. Florida,* 399 U.S. 78, 103 (1970), or to require that twelve-member juries reach unanimous verdicts, *Apodaca v. Oregon,* 406 U.S. 404, 411 (1972). On the other hand, states may

The defendant asserts that his statutory right to jury trial by twelve persons was denied when the circuit court allowed one of the regular jurors to be discharged during jury deliberations without the consent of the parties and without inquiring into or making findings of the necessity for the discharge. Sec. 972.02, Stats. 1979–80, provides for a jury of twelve in criminal cases unless the defendant waives a jury or stipulates to any number fewer than twelve in writing or by statement in open court on the record. Sec. 972.02(1), (2), Stats. 1979–80, provides as follows:

"972.02 **Jury trial; waiver.** (1) Except as otherwise provided in this chapter, criminal cases shall be tried by a jury of 12, drawn as prescribed in ch. 805, unless the defendant waives a jury in writing or by statement in open court, on the record, with the approval of the court and the consent of the state.

" (2) At any time before verdict the parties may stipulate in writing or by statement in open court, on the record, with the approval of the court, that the jury shall consist of any number less than 12."

The defendant did not waive a jury or stipulate to being tried by fewer than twelve jurors.

This court has previously considered the powers of the circuit court to discharge a regular juror during trial. We have concluded that the circuit court has discretion to discharge a regular juror during trial for cause. See

not constitutionally employ juries of fewer than six members, *Ballew v. Georgia*, 435 U.S. 223, 228 (1978), and the states are constitutionally bound to require unanimity of six-member juries, *Burch by Louisiana*, 441 U.S. 130, 138 (1979). To determine whether a certain feature of a jury system comports with federal constitutional requirements, "[t]he relevant inquiry . . . must be the function that the particular feature performs and its relation to the purposes of the jury trial." *Williams v. Florida, supra,* 399 U.S. at 99–100.

*Rodriguez v. Slattery,* 54 Wis. 2d 165, 169, 194 N.W.2d 817 (1972). See also *Callan v. Peters Construction Co.,* 94 Wis. 2d 225, 248, 288 N.W.2d 146 (Ct. App. 1979); *United States v. Domenech,* 476 F.2d 1229, 1232 (2d Cir. 1973); *United States v. Cameron,* 464 F.2d 333, 335 (3d Cir. 1972); *United States v. Maxwell,* 383 F.2d 437, 443 (2d Cir. 1967). This case presents the question of the power of the circuit court to discharge a regular juror during jury deliberations. We conclude that in order to ensure a fair trial, the circuit court must also have discretion to discharge a regular juror for cause during jury deliberations.

When a juror seeks to be excused, or a party seeks to have a juror discharged, whether before or after jury deliberations have begun, it is the circuit court's duty, prior to the exercise of its discretion to excuse the juror, to make careful inquiry into the substance of the request and to exert reasonable efforts to avoid discharging the juror. Such inquiry generally should be made out of the presence of the jurors and in the presence of all counsel and the defendant. The juror potentially subject to the discharge should not be present during counsel's arguments on the discharge. The circuit court's efforts depend on the circumstances of the case. The court must approach the issue with extreme caution to avoid a mistrial by either needlessly discharging the juror or by prejudicing in some manner the juror potentially subject to discharge or the remaining jurors.[5]

The term discretion contemplates a process of reasoning. The process depends on facts that are of record or that are reasonably derived by inference from the record. Discretion must in fact be exercised by the circuit court,

[5] See, *e.g., United States v. Cameron,* 464 F.2d 333, 335 (3d Cir. 1972); *United States v. Rowell,* 512 F.2d 766, 768 (8th Cir. 1975); *People v. Fountain,* 392 Mich. 395, 221 N.W.2d 375, 376–77 (1974).

and the circuit court must set forth on the record the basis for its exercise of discretion. Adherence to this practice facilitates the decision-making process of the circuit court in the first instance and aids appellate review. *McCleary v. State,* 49 Wis. 2d 263, 277–78, 182 N.W.2d 512 (1971).

In the instant case, unlike in the *Rodriguez* and *Callan* cases, *supra,* and in *State ex rel. Polk v. Johnson,* 47 Wis. 2d 207, 177 N.W.2d 122 (1970), there is no record that the circuit court exercised the discretion vested in it to discharge a juror. The record is totally devoid of any indication of how or when the circuit court became aware of the juror's illness; whether it was the circuit judge, the clerk of court or the bailiff who discharged the juror; or whether the juror was questioned to determine how ill she was or whether she might be able to rejoin the jury within a short time. Moreover, neither the defendant nor the state was given an opportunity to be present when the ill juror was discharged. We can not determine from the record in the instant case whether or not the circuit court exercised its discretion to discharge the juror or on what basis the court reached its decision. Under these circumstances, we can reach only one conclusion, namely, that the circuit court abused its discretion in discharging the regular juror in the instant case.[6]

### III.

The defendant also asserts that the circuit court's substitution of the alternate juror during jury deliberations violates his rights guaranteed by sec. 972.05, Stats. 1979–80, sec. 7, Art. I of the state constitution and the sixth

[6] Because we conclude that there was error under sec. 972.02(1), Stats. 1979–80, we need not reach the constitutional issues raised by the defendant.

amendment and the due process clause of the fourteenth amendment of the federal constitution.

Sec. 972.05, Stats. 1979–80, provides for the selection of alternate jurors and for the substitution of an alternate juror for a regular juror who dies or is discharged before final submission of the cause. Sec. 972.05 states:

"972.05 **Alternate jurors.** If the court is of the opinion that the trial of the action is likely to be protracted, it may, immediately after the jury is impaneled and sworn, call one or 2 alternate jurors. They shall be drawn in the same manner and have the same qualifications as regular jurors and shall be subject to like examination and challenge. Each party shall be allowed one peremptory challenge to each alternate juror. The alternate juror shall take the oath or affirmation and shall be seated next to the regular jurors and shall attend the trial at all times. If the regular jurors are kept in custody, the alternate shall also be so kept. *If before the final submission of the cause a regular juror dies or is discharged, the court shall order an alternate juror to take his place in the jury box.* If there are 2 alternate jurors, the court shall select one by lot. Upon entering the jury box, the alternate juror becomes a regular juror." (Emphasis supplied)

The defendant argues that because sec. 972.05 expressly governs substitution of alternate jurors before final submission of the cause, the statute implies that substitution after final submission is not permitted. The defendant asserts that the alternate jurors must be discharged by the circuit court on final submission of the cause to the jury and that the circuit court cannot order an alternate juror to take the place of a discharged juror after jury deliberations have begun.

In contrast, the state would have us read sec. 972.05, Stats. 1979–80, as describing only those situations in which substitution of an alternate juror is mandatory, that is when a regular juror is discharged before final

submission, and as leaving open the possibility of the circuit court exercising its discretionary power to substitute an alternate juror after final submission. Both the state and the defendant urge us to look at the legislative history of the statute. Each contends that the legislative history of sec. 972.05 supports its position.

Sec. 972.05 was originally enacted as sec. 357.065, Stats. 1937, and was originally applicable only to homicide cases. Sec. 357.065 provided that alternate jurors shall be discharged upon final submission of the cause to the jury and that if before final submission of the cause to the jury a regular juror dies or is discharged, the court shall substitute the alternate juror.[7] In 1949 the Wisconsin Code of Criminal Procedure was revised and, as part

---

[7] Sec. 357.065, Stats. 1937:
"ALTERNATE JURORS IN HOMICIDE CASES. Whenever in the opinion of the court the trial of a defendant in a homicide case is likely to be a protracted one, the court may, immediately after the jury is impaneled and sworn, direct the calling of one or two additional jurors, to be known as 'alternate jurors.' Such jurors shall be drawn from the same source, and in the same manner and have the same qualifications as regular jurors, and be subject to examination and challenge as such jurors, except that each party shall be allowed one peremptory challenge to each alternate juror. The alternate juror shall take the proper oath or affirmation and shall be seated near the regular jurors with equal facilities for seeing and hearing the proceedings in the cause, and shall attend at all times upon the trial of the cause in company with the regular jurors. They shall obey all orders and admonitions of the court, and if the regular jurors are ordered to be kept in the custody of an officer during the trial of the cause, the alternate jurors shall also be kept with the other jurors and except as hereinafter provided, *shall be discharged upon the final submission of the cause to the jury*. If, before the final submission of the cause, a regular juror dies or is discharged, the court shall order the alternate juror, if there is but one, to take his place in the jury box. If there are two alternate jurors the court shall select one by lot, who shall then take his place in the jury box. After an alternate juror is in the jury box he shall be subject to the same rules as a regular juror." (Emphasis supplied.)

of the revision, sec. 357.065 was renumbered as sec. 357.05, Stats. 1949, and the language presently used in sec. 972.05 was adopted. The 1949 revision deleted the requirement which appeared in the 1937 law that alternate jurors "shall be discharged upon the final submission of the cause to the jury." The state argues that this deletion evidences the legislative intent to allow alternate jurors to be available for substitution after jury deliberations have begun. The defendant, relying on the comments of the 1949 Advisory Committee[8] and of Assistant Attorney General William Platz[9] explaining that the intent of the 1949 revision was to preserve the substance of the old sec. 357.065 and to broaden the application of the statute from homicide cases to all criminal cases in which the trial might be protracted, contends that the substance of the 1937 law mandating that alternate jurors be discharged upon final submission is implicit in the present law.

[8] Comments of the Advisory Committee on Rules of Pleading, Practice and Procedure, Comment to ch. 631, sec. 124, Laws of 1949.

[9] The 1949 revision of the code was explained in detail as follows:

"*Sec. 357.05.* New section 357.05 *preserves the substance of the alternate juror law,* old sec. 357.065. The old law was limited to homicide cases, but it is not only in such cases that protracted trials sometimes occur. The reason for having alternate jurors applies equally to any trial which is likely to be protracted. Accordingly, the new statute does not contain such a limitation, and it is now lawful to call one or two alternate jurors in any criminal trial which is likely to be protracted." (Emphasis added.) Platz, *The 1949 Revision of the Wisconsin Code of Criminal Procedure,* 1950 Wis. L. Rev. 513.

This court has frequently referred to Platz's comments in interpreting the criminal code. See *State v. Kenyon,* 85 Wis. 2d 36, 51, 270 N.W.2d 160 (1978); *State ex rel. Gebarski v. Milwaukee County Circuit Court,* 80 Wis. 2d 489, 500–501, 259 N.W.2d 531 (1977); *State v. O'Connor,* 77 Wis. 2d 261, 278 n. 4, 252 N.W.2d 671 (1977).

Whether or not sec. 972.05 requires the circuit court to discharge an alternate juror on final submission of the cause, the alternate juror in the instant case was discharged by the circuit judge. The ultimate question is not whether the alternate juror is to be discharged upon final submission but whether sec. 972.05 allows a circuit judge, during jury deliberations, to order an alternate juror, whether or not previously discharged, to take the place of a regular juror who is discharged after jury deliberations have begun.

We can find no support in the language or legislative history of sec. 972.05 for the state's theory that the legislature intended sec. 972.05 to govern only mandatory substitution of an alternate juror before final submission of the cause to the jury and that the legislature, having failed to address the issue of substitution after final submission, intended to permit the circuit court to exercise its discretionary power to substitute an alternate juror during jury deliberations. From the language and legislative history of sec. 972.05, it appears that the legislature intended the statute to govern the entire subject of the use of alternate jurors. Furthermore, given the significant difference of opinion in the legal community as to the wisdom and constitutionality of permitting substitution of an alternate after the jury has begun deliberations,[10] we decline to infer from a silent statute

---

[10] For decisions of federal courts upholding federal convictions when alternate jurors have attended jury deliberations or have been substituted after jury deliberations have begun, see: *United State v. Phillips,* 664 F.2d 971 (5th Cir. 1981); *United States v. Baccari,* 489 F.2d 274 (10th Cir. 1973); *United States v. Allison,* 481 F.2d 468 (5th Cir. 1973), *subsq. app.,* 487 F.2d 339 (5th Cir. 1973), *cert. denied,* 416 U.S. 982 (1974); *U.S. v. Hayutin,* 398 F. 2d 944 (2d Cir. 1968), *cert. denied,* 393 U.S. 961 (1968), *subsq. app. sub tem, U.S. v. Nash,* 414 F.2d 234 (2d Cir. 1969), *cert. denied,* 396 U.S. 940 (1969); *United States v. Meinster,* 484 F. Supp. 442 (S.D. Fla 1980); *United States v. Barone,* 83 F.R.D. 565 (S.D. Fla. 1979).

that the legislature approves substitution during jury deliberations.

For a decision of a federal court invalidating a federal conviction where an alternate juror was substituted during jury deliberations, see *United States v. Lamb,* 529 F.2d 1153 (9th Cir. 1975).

For a decision of a federal court upholding state convictions as not violating federal due process when alternate jurors attended jury deliberations or were substituted during deliberations, see *Johnson v. Duckworth,* 650 F.2d 122 (7th Cir. 1981) (court allowed alternate juror to attend but not participate in the jury's deliberations); *Henderson v. Lane,* 613 F.2d 175 (7th Cir. 1980) (substitution of alternate juror during jury deliberations).

For decisions of state courts upholding convictions under state statutes or court rules authorizing substitution of an alternate juror after jury deliberations have begun, see *State v. Miller,* 76 N.J. 392, 388 A.2d 218 (1978); *Smith v. State,* 170 N.E.2d 794 (Ind. 1960); *Commonwealth v. Kalinowski,* —— Mass. ——, 429 N.E.2d 368 (Ct. App. 1981).

The New York Court of Appeals has struck down a statute providing for substitution of a jury during jury deliberations on state constitutional grounds, *People v. Ryan,* 19 N.Y.2d 100, 278 N.Y.S. 2d 199, 224 N.E.2d 710 (1966), while the California Supreme Court has upheld such a statute, *People v. Collins,* 17 Cal. 3d 687, 131 Cal. Rptr. 782, 552 P2d 742 (1976).

For cases relating to the discharge and substitution of jurors see Annot., *Constitutionality and Construction of Statute or Court Rule Relating to Alternate or Additional Jurors or Substitution of Jurors during Trial,* 84 A.L.R.2d 1288 (1962).

For commentary opposing substitution of an alternate juror during jury deliberations, see 8A Moore, *Federal Practice,* par. 24.-05 (2d ed. Cipes p. 1980); 2 Wright, *Federal Practice and Procedure, Criminal* sec. 388, p. 52 (1969); 3 ABA Standards for Criminal Justice, Trial by Jury, sec. 15–2.7, Commentary p. 15.74 (2d ed. 1980).

For commentary supporting substitution of an alternate juror during jury deliberations, see Paisley, *The Federal Rule on Alternate Jurors,* 51 A.B.A.J. 1044 (1965); Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure of the Judicial Conference of the United States (1973), quoted in *United States v. Lamb,* 529 F.2d 1153, 1162, n. 7 (9th Cir. 1975) (dissenting opinion); Report of the Committee on Federal Rules of Civil Procedure, Judicial Conference—Ninth Circuit, 37 F.R.D. 71, 74 (1965).

We shall discuss the diverse views on the question of whether an alternate juror should be substituted after final submission of the cause not only as support for our conclusion that substitution during jury deliberations should not be inferred from a silent statute but also as support for our conclusion that the error in the instant case was not harmless.

Although discharge of a juror during jury deliberations is an infrequent event, its rare occurrence poses a very difficult question for the fair and efficient administration of justice. On the one hand there is concern that where a juror becomes incapacitated or disqualified and the defendant relies on his state constitutional right to a twelve-person jury a procedure should be established in advance to avoid the possibility of a mistrial and retrial in a long, protracted case.[11] On the other hand, there is concern that any time there is substitution of a juror after jury deliberations have begun, the same twelve jurors have not participated in the entire deliberative process. Two essential features of the right to trial by jury in a felony prosecution in this state are that the jury be composed of twelve persons and that the jury reach a unanimous verdict. Twelve people must have the opportunity to review the evidence in light of each juror's perception, memory and reaction and to reach their consensus through deliberations which are the common experience of all of them. Each of the twelve must have the opportunity to persuade the other members of the jury and to be persuaded by them. *State ex rel. Polk v. Johnson*, 47 Wis. 2d 207, 214, 177 N.W.2d 122 (1970). If, during deliberations, a juror is discharged and an-

[11] See, *e.g.*, *United States v. Phillips*, 664 F.2d 971, 985 (5th Cir. 1981) (a juror was discharged after jury deliberations began after a four-month trial); *United States v. Barone*, 83 F.R.D. 565, 566 (S.D. Fla. 1979) (a juror was discharged after jury deliberations began after a seven-month trial).

other substituted, the eleven regular jurors will have had the benefit of the views of the discharged jurors while the alternate will not.[12] The eleven regular jurors will have formed views without the benefit of the views of the alternate juror, and the alternate juror who is unfamiliar with the prior deliberations will participate without the benefit of the prior group discussion. If deliberations have progressed to the point where the eleven regular jurors are in substantial agreement, the alternate juror may find it difficult to persuade and convince the eleven who have already come to an understanding.[13]

Little is known about the deliberative process of the jury. In considering the essentials of the jury trial, courts and commentators have disagreed whether substi-

[12] "It is obvious that if a jury which renders a verdict has consulted with one not a juror in the course of its deliberations that verdict is tainted by the potential influence in the ultimate verdict of the participation of the stranger in the deliberations. In principle, the instant situation cannot be differentiated from that just posed. Eleven of the jurors who concurred in the verdict were subjected for an hour and a half to the views, opinions and influence of the juror subsequently excused." *State v. Miller*, 76 N.J. 392, 388 A.2d 218, 236 (1978) (Conford, J., dissenting).

[13] The New York Court of Appeals in striking down a statute allowing substitution during deliberation said:

"the 'alternate juror entered the jury room after the eleven original jurors had sifted the evidence, and in all probability, already formulated their preliminary positions. Most important of all, each of the eleven jurors was aware of the outlooks and positions of the others on the questions presented by the case, and sufficient time had elapsed so that surely the interplay of influences among and between the jurors had come into operation. . . . [I]f deliberations had progressed to a stage where the original eleven were in substantial agreement, they were in a position to present a formidable obstacle to the alternate juror's attempts to persuade and convince the eleven remaining original jurors.' " *People v. Ryan*, 19 N.Y.2d 100, 278 N.Y.S.2d 199, 202, 224 N.E.2d 710 (1966).

tution of an alternate juror during jury deliberations is a viable solution to the problem of juror disqualification during jury deliberations after a long, protracted trial. Most of the court decisions and the legal literature on the subject of substitution during jury deliberations involve Rule 24(c) of the Federal Rules of Criminal Procedure which expressly provides that alternate jurors shall replace regular jurors before the jury retires to consider its verdict and that alternate jurors shall be discharged after the jury retires to consider its verdict. Like sec. 972.05, Rule 24(c) does not expressly provide for replacement of regular jurors after the jury retires to consider its verdict.[14] Rule 24(c) states as follows:

"(c) *Alternate Jurors.* The court may direct that not more than 6 jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the regular jurors. *An alternate juror who does not re-*

[14] In discussing the history of Rule 24(c), Professor Orfield observed that an early draft provided for substitution of alternate jurors after submission of the case to the jury. The reports, without explanation, that when the proposal was submitted to the U.S. Supreme Court for comment, the Court inquired whether the drafters had satisfied themselves that the proposed post-submission substitution was desirable or constitutional. The drafters thereafter abandoned the provision. Orfield, *Trial Jurors in Federal Criminal Cases,* 29 F.R.D. 43, 46 (1961).

For a discussion of the federal cases and Rule 24(c), see Note, *Criminal Procedure—Jury Trial—Rule 24(c) of the Federal Rules of Criminal Procedure Requires Discharge of Alternate Juror When Jury Acts as Separate Entity,* 19 Wayne L. Rev. 1605 (1973).

*place a regular juror shall be discharged after the jury
retires to consider its verdict.* Each side is entitled to 1
peremptory challenge in addition to those otherwise al-
lowed by law if 1 or 2 alternate jurors are to be im-
panelled. The additional peremptory challenges may be
used against an alternate juror only, and the other per-
emptory challenges allowed by these rules may not be
used against an alternate juror." (Emphasis supplied.)

The Ninth Circuit Federal Court of Appeals has held
that Rule 24(c) mandates discharge of the alternate
juror and prohibits substitution after final submission.
The Ninth Circuit concluded that if substitution were
allowed there would be an inherent coercive effect upon
an alternate who joins a jury after deliberations begin
and there was the possibility that a juror who disagrees
with the other jurors might be coerced into feigning in-
capacity in order to be relieved of sitting on the jury.
The Ninth Circuit appears to have adopted a *per se* rule
of reversal, that is, if an alternate juror is substituted
during jury deliberations, the conviction must be re-
versed. *United States v. Lamb,* 529 F.2d 1153 (9th Cir.
1975). See also *United States v. Evans,* 635 F.2d 1124,
1128 (4th Cir. 1980) (Ervin, J. dissenting). Other fed-
eral courts view the trial court's substitution of an alter-
nate juror for a regular juror during jury deliberations
as a violation of Rule 24(c) but will review the circum-
stances of the case to determine whether the violation
is prejudicial to the defendant. See, *e.g., United States
v. Phillips,* 664 F.2d 971, 990–996 (5th Cir. 1981).

The division of opinion as to the feasibility of substi-
tution of jurors during jury deliberation was recently put
into sharp focus in a preliminary draft of Proposed
Amendments to the Federal Rules of Criminal Procedure
distributed for public comment by the Judicial Confer-
ence Advisory Committee on the Federal Rules of Crimi-
nal Procedure. See 30 Cr. L. Rptr. 3001 (1981). The

Advisory Committee has circulated alternative proposals for dealing with the problem created by the discharge of a juror after the jury has begun deliberations. Under one proposal, a trial court which discharges a juror for just cause after deliberations have begun may, in its discretion, allow a valid verdict to be returned by the remaining eleven jurors. Under the other proposal, the trial court retains alternate jurors during the jury deliberations and, if a substitution of a regular juror becomes necessary by reason of a regular juror's death, illness or disqualification, the regular juror may be replaced by an alternate juror who has been retained. Under this second proposal the trial court must instruct the entire jury to commence their deliberations anew.[15]

Although the Advisory Committee offered alternative proposals for the purpose of public discussion, the Advisory Committee urged rejection of the second alternative which authorizes the substitution of a juror after jury deliberations have begun. The Advisory Committee concluded that once the jury deliberations had begun, the process should not be disturbed by the substitution of

[15] Under this proposal, the following sentence would be added to Rule 24(c) quoted above:

"Alternate jurors shall not be present at the deliberations of the jury, but such number as the court shall, in its discretion, decide to be necessary shall be retained and not discharged while the jury is deliberating."

and a new subsection (d) would be added as follows:

"(d) REPLACING A JUROR. Alternate jurors in the order in which they are called shall replace jurors who become or are found to be unable or disqualified to perform their duties. After the jury has retired to consider its verdict, a juror may be replaced only by an alternate juror retained as provided in subdivision (c) of this rule, in which case the court shall instruct the entire jury to commence their deliberations anew."

one or more jurors. The Advisory Committee set forth its reasoning as follows:

"The central difficulty with substitution, whether viewed only as a practical problem or a question of constitutional dimensions (procedural due process under the Fifth Amendment or jury trial under the Sixth Amendment), is that there does not appear to be any way to nullify the impact of what has occurred without the participation of the new juror. Even were it required that the jury 'review' with the new juror their prior deliberations or that the jury upon substitution start deliberations anew, it still seems likely that the continuing jurors would be influenced by the earlier deliberations and that the new juror would be somewhat intimidated by the others by virtue of being a newcomer to the deliberations. As for the possibility of sending in the alternates at the very beginning with instructions to listen but not to participate until substituted, this scheme is likewise attended by practical difficulties and offends 'the cardinal principle that the deliberations of the jury shall remain private and secret in every case.' *United States v. Virginia Erection Corp.*, 335 F.2d 868 (4th Cir. 1064)." Advisory Committee Note on proposed amendments to Rule 23(b), 30 Cr. L. Rptr. 3013.

Some years earlier the committee on the American Bar Association Standards for Criminal Justice reached the same conclusion that substitution of alternate jurors should be limited to those cases in which a regular juror is discharged before jury deliberations begin. The Commentary to the ABA Standards rejects juror substitution after final submission to the jury, expressing the view "that it is not desirable to allow a juror who is unfamiliar with the prior deliberations to suddenly join the group and participate in the voting without the benefit of the prior group discussion." 3 ABA Standards for Criminal Justice, Trial by Jury, sec. 15–2.7, Commentary, p. 15.74 (2d ed. 1980).

In summary, we cannot adopt the state's position that the Wisconsin legislature's deletion in 1949 of the language requiring the discharge of alternate jurors after final submission evidences the legislative intent to allow substitution of alternate jurors after jury deliberations have begun. If the legislature intended such a result it could have done so explicitly without difficulty. Moreover, in view of the significant division of opinion in the legal community as to the wisdom and constitutionality of allowing substitution of an alternate juror after the jury has begun deliberations, we decline to infer legislative approval of such substitution from a silent statute. We hold that in the absence of express authorization by statute or rule for substitution of an alternate juror for a regular juror after jury deliberations have begun[16] or in the absence of consent by the defendant to such substitution, hereafter it is reversible error for a circuit court to substitute an alternate juror for a regular juror after jury deliberations have begun. The decision whether an alternate juror should be permitted to replace a juror who dies, becomes disabled or is otherwise disqualified during the jury's deliberations is a policy decision which should not be made by each circuit court on a case-by-case basis without any established guidelines. Until there is express authorization permitting a circuit court to substitute an alternate juror during jury deliberations, the circuit court has only three options available to it if a regular juror is discharged after jury deliberations have begun: first, to obtain a stipulation by the parties to proceed with fewer than twelve jurors; second, to obtain a stipulation by the parties to substitute a juror; and third, to declare a mistrial.

[16] Whether this court may, and if it may should, modify sec. 972.05, Stats. 1979–80, pursuant to its statutory or other rule-making power, see, e.g., 751.12, Stats. 1979–80, is not a question presently before the court.

## IV.

Although hereafter we shall view substitution of an alternate juror during jury deliberations as reversible error, the question remains in the instant case whether substitution of the alternate juror constitutes harmless error. Sec. 805.18(2), Stats. 1979–80, provides as follows:

"Sec. 805.18. (2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection, or misdirection of jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial."

The state characterizes the evidence presented at the second phase of the bifurcated trial as so overwhelmingly in favor of the verdict that any error in the substitution of the alternate juror was harmless error. This test for error cannot be utilized in this case. The defendant here asserts that the substitution of an alternate juror deprived him of the essential features of his statutory right to a jury trial, namely, deliberation by twelve persons to reach a unanimous verdict. The relevant inquiry in this case, as in *State v. Coble,* 100 Wis. 2d 179, 211–12, 301 N.W.2d 221 (1981), which also involved an alleged error in the composition of the jury, is whether the jury comports with the essential statutory or constitutional features and purposes of a jury trial, not whether the outcome would have probably been the same regardless of the composition of the jury.

Although it is impossible to inquire into the states of mind of the jurors, we conclude that the circumstances of

this case suggest that the discharged juror may have played a significant role in the jury deliberations and that the alternate juror did not participate fully in the deliberations. Hence in this case the substitution put in jeopardy the essential features of a jury trial.

The discharged juror may have played a significant role in what the foreman described as a stalemate. The record is not clear whether the jury posed questions to the circuit court before or after the alternate juror joined the jury. After the circuit court refused to answer the questions which appeared to have produced the stalemate, the jury, this time with the alternate juror, deliberated a mere thirty-four minutes.

The eleven regular jurors in this case were exposed to the influence of the discharged juror for a somewhat longer period of time than they were exposed to the substituted alternate juror. The longer the period of time the jury deliberates before substitution and the shorter the time of jury deliberation after substitution, the greater the possibility of prejudice by the substitution. In this case the jury deliberated one hour and thirty-five minutes before substitution and one hour and twenty-one minutes after.

The discharged alternate juror was never formally reinstated before he joined the deliberations. The preferred procedure would have been to voir dire him in the presence of the parties and counsel to determine if he were still competent to act as an impartial juror and, if he were, to administer the oath again.

Further, the circuit court did not question the eleven regular jurors to determine whether they were capable of beginning deliberations anew, and the circuit court did not instruct the jury to begin deliberations anew. The total time that the alternate juror spent with the jury in the instant case, one hour and twenty-one minutes, gives no clear indication whether or not the jurors began de-

liberations anew when the alternate juror joined them or whether they gave conscientious, careful reconsideration to all the facts of the case.

In its memorandum decision the circuit court concluded that the absence of such questioning or instructions is not prejudicial because "it would be unfair and unreasonable for anyone to assume that the alternate juror did not participate fully from the time he started to deliberate until the jury returned its verdict." In using this reasoning the circuit court ignored the generally accepted view that the principal danger posed by substitution during jury deliberations is that the jury will not begin deliberations anew and that therefore twelve jurors will not have participated fully in the jury's decision-making process. Courts and commentators who support substitution during jury deliberations place strong emphasis on the need for the trial court to take protective measures to negate any possible coercive effects on the substituted juror and to assure that the alternate juror will participate fully in the deliberations. See, *e.g., United States v. Phillips,* 664 F.2d 971 (5th Cir. 1981); *United States v. Barone,* 83 F.2d 565 (S.D. Fla. 1979); *State v. Miller,* 76 N.J. 392, 388 A.2d 218 (1978). The Federal Conference Advisory Committee recognized the importance of questioning each juror and reinstructing the jury in the event of substitution to preserve inviolate the fundamental right to trial by jury, saying:

"If an alternate juror replaces a regular juror after deliberations have started, subdivision (d) requires the judge to instruct the jury to commence their deliberations anew. This is an important requirement. As noted in *United States v. Barone,* [83 F.R.D. 565 (S.D. Fla. 1979)]: 'If the jury is instructed to begin anew with its entire process of deliberation and if the substituted alternate participates fully in those deliberations, the fundamental right of the defendant to a unanimous verdict by a jury of twelve is preserved inviolate.' An especially

sound procedure was that used by the trial judge in *Barone:* 'Each and every one of the eleven jurors was questioned exhaustively as to his or her willingness to begin deliberations anew, giving due consideration to the views of the others, including those of the new member.' " 30 Cr. L. Rptr. 3014.

In those cases in which courts have concluded that substitution of an alternate juror during jury deliberations may be permitted, one or more of the following factors existed: (1) The trial was of significant duration; (2) the parties expressly and intelligently consented to the substitution; (3) the trial court questioned the alternate juror to determine whether he or she had been prejudiced after the jury began deliberations; (4) the trial court exhaustively questioned each juror as to his or her willingness to begin deliberations anew, giving due consideration to the views of the other jurors, including those of the alternate juror; and (5) the trial court instructed the jury to set aside prior deliberations and to begin deliberations anew.

None of these factors exists in the instant case. The trial here took less than one day—it took about four and a half hours. The benefit to be derived from allowing substitution in this case was not great. Repeating the trial would not have been a great inconvenience, while, as noted previously, any time there is substitution during jury deliberations, there is the danger that not all twelve jurors will participate fully in reaching a unanimous verdict. The circuit court could not get the defendant to consent to substitution and the circuit court did not question the alternate juror before he joined the jury's deliberations. It does, however, appear from the record of the hearing on the motions after verdict that the alternate juror was not prejudiced during the period between his discharge and his substitution. The circuit court allowed the alternate juror to join the jury deliberations

without questioning the regular jurors or instructing them to deliberate anew.

Considering all the circumstances of this case, we conclude that the substitution in the instant case violated the defendant's right to have a trial by a jury of twelve persons who deliberated together to reach a unanimous verdict and that the substitution therefore was not harmless error. As we said in *State ex rel. Polk v. Johnson,* 47 Wis.2d 207, 214, 177 N.W.2d 122 (1970), "Our statutory jury is twelve persons and any litigant can insist upon having the recollections, arguments, and conclusion of all twelve jurors during the jury's deliberations." (Note omitted.) Accordingly, we remand the cause to the circuit court for a new trial on the issue of whether the defendant suffered from a mental disease or defect at the time of the commission of the crimes.[17] While we have examined whether the error of substitution of a jury during deliberations was harmless in the instant case, absent a change in the statutes or rules, substitution of a juror during jury deliberations will be treated as reversible error.

*By the Court.*—Judgment and order of the circuit court reversed; cause remanded to the circuit court for a new trial on the plea of not guilty by reason of mental disease or defect.

---

[17] Because we conclude that sec. 972.05, Stats. 1979–80, does not provide for substitution during deliberations and that the failure to follow the dictates of that section is reversible error, we need not reach the defendant's assertion that substitution of an alternate juror during jury deliberations violates sec. 7, art. I, of the state constitution.