STATE of Wisconsin, Plaintiff-Respondent, †
v.

Harold KOPUT, Defendant-Appellant.

Court of Appeals

*No. 85–2244-CR. Submitted on briefs July 8, 1986.—Decided
October 8, 1986.*

(Also reported in 396 N.W.2d 773.)

†Petition to review pending.

For the plaintiff-respondent, the cause was submitted on the briefs of *Bronson C. La Follette*, attorney general, and *Sally Wellman*, assistant attorney general.

For the defendant-appellant, the cause was submitted on the briefs of *Donna L. Hintze*, assistant state public defender, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

SULLIVAN, J. Harold Koput appeals from a judgment convicting him of first-degree murder and from an order denying his postconviction motion for a new trial. We hold that although Koput's constitutional rights to counsel and to remain silent were not violated, Koput was denied his constitutional right to a unanimous verdict in the responsibility phase of his bifurcated trial. We therefore reverse the judgment and the order and remand for a new trial.

In March, 1983, a woman was murdered by an unknown assailant. On October 4, 1983, Koput spoke to his priest who, with Koput's permission, called the Milwaukee Police Department. That night, Koput met with an officer and said that he had been with the victim on the night she was killed. The Milwaukee Police Department referred this information, none of which was inculpatory, to the Milwaukee County Sheriff's Department, which had jurisdiction of the matter. Koput made a voluntary, non-inculpatory statement to a sheriff's deputy at Koput's home a few hours later. At 10:00 the next morning, sheriff's detectives Smukowski and McVeigh visited Koput at his job. Koput agreed to accompany them to the sheriff's department to make a statement.

Smukowski and McVeigh questioned Koput for about three-and-a-half hours. By early afternoon, Smukowski concluded that Koput was a suspect. Koput had not made any inculpatory statements but had been inconsistent and "fidgety." Smukowski orally gave Koput his *Miranda* rights. Koput said that he understood his rights and agreed to make a statement. Smukowski then gave Koput a rights-and-waiver form. To the question, "Realizing that you have these rights, do you wish to consult with an attorney?" Koput wrote

197

"yes." He then paused and asked if he had to see an attorney now. Smukowski said "yes." Koput said that he did not wish to see an attorney now. Smukowski said that he should change his answer to "no" and initial it. Koput did so. He then wrote "yes" in response to the next question, "Realizing that you have these rights, do you wish to answer questions or make a statement now without an attorney present?" Koput then signed his name below the following paragraph:

### WAIVER OF RIGHTS

I have read this statement of my rights and I fully understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Smukowski asked Koput if he could tell them anything about the crime. Koput said, "I don't want to talk to you guys anymore." Smukowski and McVeigh then left the room.

Sergeant Zens entered a few minutes later and asked Koput why he did not want to talk to Smukowski and McVeigh, and Koput replied that he did not like those two officers. Zens asked how Koput felt about him, and Koput said, "I guess you're okay." Zens saw to Koput's personal needs and left.

Koput was left alone and unguarded in the interview room, which had no door, for about two hours. Officers occasionally asked about his personal needs but did not question him.

Around 4:15 p.m., Sergeant Tobiasz entered the room and asked Koput if he wanted to talk about the murder. Tobiasz read Koput his *Miranda* rights and Koput said that he understood them. Tobiasz said that if Koput wanted to talk, he should tell 100% of the truth. Koput then gave a primarily narrative statement in which he confessed. He confessed again to Zens, signed a transcribed confession, and then went with officers to the crime scene and re-enacted the murder.

After being charged, Koput entered pleas of not guilty and not guilty by reason of mental disease or defect. Trial was bifurcated. The jury returned a unanimous verdict of guilty at the first phase of the trial. At the trial on the responsibility issue, however, the same jury returned a verdict of sanity with one dissenting juror. The trial court, which had instructed the jury that only ten of them need agree, accepted the verdict and entered judgment accordingly. Koput's postconviction motions were denied, and he now appeals.

Koput raises three constitutional issues. The underlying facts are undisputed. We therefore independently review the issues. *See State v. Woods*, 117 Wis. 2d 701, 715-16, 345 N.W.2d 457, 465 (1984).

The first two issues concern Koput's rights to counsel and silence as stated in *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny. The state asserts that Koput was not "in custody" when he made his inculpatory statements and, thus, is not entitled to the protections of *Miranda*. We need not decide whether Koput was in custody, however, because we conclude that even if he were, his rights to counsel and silence were not violated.

199

Koput first asserts that his inculpatory statements, and evidence obtained from them, should have been suppressed because his state and federal constitutional right to counsel was violated. He argues that he invoked his right to counsel and did not validly waive it. We disagree.

Koput relies on *Edwards v. Arizona*, 451 U.S. 477, *reh'g denied*, 452 U.S. 973 (1981). The *Edwards* rule was explained in *Smith v. Illinois*, 469 U.S. 91, 94–95 (1984) (per curiam) (citations and footnote omitted) as follows:

> An accused in custody, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him," unless he validly waives his earlier request for the assistance of counsel. This "rigid" prophylactic rule embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

Koput had already agreed, orally, to talk without an attorney present. Then, upon writing "yes" to the question about wanting an attorney now, he asked if he had to see an attorney at that time. The officer's answer in the affirmative was not unreasonable and did not amount to the badgering from which *Edwards* protects an accused. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983). Koput immediately replied that, contrary to the "yes" he had just written, he did *not* want to see

an attorney then. He continued to fill out the form, indicating again that he wanted to talk without an attorney present.

Koput did not express a desire to deal with the officers only through counsel. He merely asked a question to clarify his written response on the rights form. He had already waived his rights orally and did not change his mind about that waiver while filling out the form. Every reference to an attorney does not constitute an invocation of the right to counsel. *See People v. Krueger*, 412 N.E.2d 537, 540 (Ill. 1980), *cert. denied*, 451 U.S. 1019 (1981). We conclude that Koput did not actually invoke his right to counsel and did validly waive that right.

## RIGHT TO SILENCE

Koput next asserts that his right to silence was not scrupulously honored and that, consequently, his subsequent inculpatory statements should have been suppressed. We disagree.

Koput relies on *Michigan v. Mosley*, 423 U.S. 96 (1975), which held that statements obtained by police, after an accused invokes his or her right to remain silent, are admissible only if that right was "scrupulously honored." *Id.* at 103–04. In determining whether the accused's right to silence had been scrupulously honored, the *Mosley* Court focused on five factors:

> (1) The original interrogation is promptly terminated; (2) The questioning is resumed only "after the passage of a significant period of time;" (3) The suspect is given "full and complete *Miranda* warnings at the outset of the second interrogation;" (4) A differ-

201

ent officer resumes the questioning; and (5) The second interrogation is "restricted . . . to a crime that had not been a subject of the earlier interrogation."

*Wentela v. State*, 95 Wis. 2d 283, 294, 290 N.W.2d 312, 317 (1980) (citing *Mosley*, 423 U.S. at 104-06).

The *Mosley* factors are not exclusively controlling; they do not establish a test that can be woodenly applied. *State v. Hartwig*, 123 Wis. 2d 278, 284-85, 366 N.W.2d 866, 870 (1985). Rather, the factors provide a framework for determining whether, under the circumstances, an accused's right to silence was scrupulously honored. *Id.* at 285, 366 N.W.2d at 870. The presence of the *Mosley* factors

> indicates that the potentially coercive effect of the renewed attempt to question a suspect may be held to be so low as to justify a finding that a statement elicited through questioning after the suspect has invoked his privilege is *not* "the product of compulsion," the primary concern of *Miranda*.

*Wentela*, 95 Wis. 2d at 294, 290 N.W.2d at 317. We consider the totality of circumstances. *See Leach v. State*, 83 Wis. 2d 199, 214, 265 N.W.2d 495, 502 (1978).

The first four *Mosley* factors are present. Smukowski and McVeigh immediately ceased questioning Koput when he said, "I don't want to talk to you guys anymore." We note that this statement is ambiguous. The officers could have interpreted the statement to mean that Koput did not want to talk at all, or that Koput was willing to talk but not to those two officers. Because Koput was not unequivocal in invoking his right to silence, Zens' clarifying questions were not a resumption of the interrogation. In fact, Koput's answers to Zens'

questions showed that Koput merely objected personally to Smukowski and McVeigh.

Second, the interrogation was resumed only after a significant period of time had passed. Tobiasz entered the interview room approximately two hours after Smukowski and McVeigh had left. A similar length of time was involved in *Mosley*, 423 U.S. at 104, and the Supreme Court concluded that the defendant's right to silence had been scrupulously honored. *Id.* at 106–07.

The third and fourth factors are also present. Koput was given full and complete *Miranda* warnings at the beginning of the second interrogation, and a different officer, Tobiasz, resumed the questioning.

The only *Mosley* factor not present is the final one: Koput's first and second interrogations concerned the same crime. Nevertheless, we are convinced that, under all the circumstances, Koput's right to silence was scrupulously honored. His inculpatory statements were not the product of compulsion.

Because Koput's constitutional rights to counsel and silence were not violated, the trial court properly refused to suppress his inculpatory statements and any evidence derived from them. Koput, therefore, is not entitled to reversal on these grounds.

## JURY UNANIMITY

Finally, Koput asserts that he is entitled to a new trial because the jury's verdict in the second phase of the trial was not unanimous. We agree.

Koput's right to a jury trial is secured by art. I, secs. 5 and 7 of the state constitution. That right includes the

right to a unanimous verdict in a criminal trial. *Holland v. State*, 91 Wis. 2d 134, 138, 280 N.W.2d 288, 290 (1979) *cert. denied*, 445 U.S. 931 (1980). Section 971.175, Stats., requires that the issues of guilt and responsibility be heard separately, "with a sequential order of proof before the same jury in a continuous trial," when a defendant has joined a guilty plea with a plea of not guilty by reason of mental disease or defect.

Koput argues that he was denied his constitutional right to a jury trial because the trial court instructed the jury that only ten of them had to agree on the responsibility issue, and the trial court accepted a verdict in which one juror dissented. The state counters that Koput agreed to a 5/6 verdict and therefore waived the issue of unanimity. The state further argues that a defendant is not entitled to a unanimous verdict in the responsibility phase.

■

As to the question of waiver, we see no reason to withdraw our language in *Holland v. State*, 87 Wis. 2d 567, 597-98, 275 N.W.2d 162, 177 (Ct. App.) (footnote omitted), *rev'd on other grounds*, 91 Wis. 2d 134, 280 N.W.2d 288 (1979), that the right to a unanimous verdict is so fundamental that it cannot be waived. Even if a defendant may waive the right to a unanimous verdict, however, we may, in our discretion, choose to address the issue. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980).

In its comment to jury instruction Wis J I—Criminal 605, the Wisconsin Criminal Jury Instructions Committee explained the unanimity issue as follows:

> Wisconsin law is not explicit as to whether a unanimous verdict is required at the second phase. Since the burden of persuasion is on the defendant

and the civil standard of proof applies, it could be argued that a 5/6 verdict would be appropriate. The Committee concluded that in the absence of explicit legislative action or appellate court holding, it was best to assume that a unanimous verdict is required in all criminal cases, *Holland v. State*, 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979). The second phase of a bifurcated trial is considered part of the criminal case, sec. 971.175; also see *Hoppenrath v. State*, 97 Wis. 2d 449, 293 N.W.2d 910 (1980). Therefore, it appears that the unanimous verdict requirement applies to the second phase. Though the issue was not essential to the disposition of the case, the Wisconsin Supreme Court has assumed that a unanimous verdict was required at the second phase. See *State v. Lehman*, 108 Wis. 2d 291, 318, 321 N.W.2d 212 [, 225] (1982).

The *Lehman* court, in holding that the trial court committed reversible error in allowing the substitution of a juror after deliberation of the responsibility issue began, stated that "[t]wo essential features of the right to trial by jury in a felony prosecution in this state are that the jury be composed of twelve persons and that the jury reach a unanimous verdict." *Id.* at 307, 321 N.W.2d at 220. The state argues that the quoted language should be ignored because it was not essential to the holding. We decline to join, or to resolve, the debate; the above statement is our supreme court's only pronouncement on the subject and we shall follow it.

■

Although the responsibility issue is tried after return of a verdict in the guilt phase, it is still essentially an affirmative defense. *See* sec. 971.15(3), Stats. The two phases constitute one continuous criminal trial. Sec. 971.175, Stats. Thus, the responsibility issue, like all

other issues in a criminal trial, must be decided by a unanimous jury. We therefore hold that Koput is entitled to a new trial, consisting of both guilt and responsibility phases. Both verdicts must be unanimous for a judgment of conviction to result.

*By the Court.*—Judgment and order reversed; cause remanded for a new trial.